William K. SUPERCZYNSKI, Plaintiff-Appellant,

v.

P.T.O. SERVICES, INC. and Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent), Defendants-Appellees.

No. 82–1326.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1983.

Decided April 19, 1983.

---

Joseph M. Tobias, Chicago, Ill., for plaintiff-appellant.

J. Kevin Hennessy, Naphin & Cox, Paul L. Glover, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and BAUER and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff William K. Superczynski sued Defendants P.T.O. Services, Inc., his employer since 1977, and Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1947), charging wrongful termination of employment and breach by the Union of its duty of fair representation.

The district court granted both defendants' motions for summary judgment, finding that the plaintiff had not established that the Union's conduct toward him was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The court noted that the plaintiff could not sustain a charge against his employer, P.T.O. Services, in the absence of proof that the Union breached its duty of fair representation. We affirm.

## I

The plaintiff was fired from his job with P.T.O. Services on February 1, 1978, as a result of an incident on January 28, 1978.

On January 28, the plaintiff, while delivering a load of fifty percent caustic soda to one of P.T.O. Services' customers, refused either to produce or to wear a protective, waterproof coat. The plaintiff argued that he had never been required to carry such gear with him, and did not have it that night. He contended that this customer had never before required him to be so attired. Additionally, he noted that he already was wearing several layers of heavy clothing as protection from the cold weather. Nevertheless, the customer ordered the plaintiff to leave without completing the delivery.

The plaintiff received a letter dated February 6 informing him of his dismissal effective February 1. The plaintiff soon thereafter wrote the Union's executive director requesting assistance. In response, the Union scheduled a grievance committee hearing for February 24.

The plaintiff met with his field representative, John Johnson, several times before the grievance committee hearing to discuss the circumstances surrounding his firing. Johnson attempted with no success to have the plaintiff reinstated before the hearing. Johnson also instructed the plaintiff how to prepare for the hearing—for example, by securing statements of support from fellow drivers.

When the plaintiff arrived for the grievance committee hearing on February 24, he learned that Johnson was out of town and that another Union representative, Ray Seaman, would represent him. Johnson had anticipated his unavailability and had discussed the plaintiff's claims with Seaman. Seaman conferred briefly with the plaintiff before the hearing.

At the hearing, P.T.O. Services presented evidence to justify the plaintiff's dismissal, including letters from the customer who had refused delivery of the caustic soda and a four-page "work record" summarizing incidents as far back as 1974. P.T.O. Services also offered as evidence a document signed by the plaintiff on January 5, 1976, while he was an employee of K.A. Steel Chemical

Company. The document declared that the plaintiff, who had been fired by K.A. Steel, would be reinstated, but if he repeated the behavior for which he was fired, then he would be "irretrievably" terminated. Seaman objected to this evidence as justification for the plaintiff's dismissal.

Seaman and the plaintiff, in addition to challenging P.T.O. Services' evidence, submitted evidence on the plaintiff's behalf, including statements from two drivers to the effect that P.T.O. Services had never specifically required protective apparel.

Union General Counsel William Crawford acted as hearing officer and prepared a report which was submitted to the Union's executive director. The Union and P.T.O. Services jointly determined that the plaintiff's grievance should be denied. After he was notified of the grievance committee's decision, the plaintiff requested reconsideration. His request was denied.

II

The plaintiff argues that the Union breached its duty of fair representation, alleging: (1) the Union failed to argue adequately that the plaintiff in fact broke no rules; (2) the Union failed to independently investigate the circumstances surrounding the January 28 incident; (3) the Union failed to advance the plaintiff's grievance after the grievance committee unanimously found his claim to be without merit; and (4) the plaintiff was inadequately represented because Seaman, and not Johnson, appeared for him at the hearing.[1]

*Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981), is the law of this circuit regarding the proof required of a plaintiff seeking to establish a breach of fair representation in an individual grievance proceeding. Several cases recognize *Hoffman* as the controlling standard. *See Graf v. Elgin, Joliet & Eastern Ry.,* 697 F.2d 771, 777–78 (7th Cir. 1983); *United Steel Workers of America v. NLRB,* 692 F.2d 1052, 1057 (7th Cir.1982) (*per curiam*); *Cote v. Eagle Stores, Inc.,*

688 F.2d 32, 34–35 (7th Cir.1982) (*per curiam*); *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 695–96 (7th Cir.1982) (Peck, J., concurring). *Hoffman* holds that a union breaches its duty to fairly represent a worker if it deliberately and unjustifiably refuses to represent that worker in processing a grievance. The union's misconduct must be intentional.

The *Hoffman* standard is derived from the United States Supreme Court's decision in *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916, where the Court wrote that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." In *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971), the Court reaffirmed that for the respondent to make out a claim of breach by his union, "[he] must have proved 'arbitrary or bad-faith conduct on the part of the Union.' *Vaca v. Sipes, supra,* 386 U.S. at 193, 87 S.Ct. at 918. There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.' *Humphrey v. Moore,* [375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964)]." The *Lockridge* Court, in a discussion of preemption principles, explained that "the duty of fair representation was judicially evolved ... to enforce fully the important principle that no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers." *Lockridge,* 403 U.S. at 301, 91 S.Ct. at 1925; *see Hoffman,* 658 F.2d at 521–22 & n. 2.

The Supreme Court applied the *Vaca* standards in *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), in its discussion of whether a suit against an employer for breach of a collective-bargaining contract was properly dismissed when the accompanying complaint against the union for breach of duty of fair representation with-

---

1. Several other allegations by the plaintiff concerning the Union's handling of the grievance and its relationship with P.T.O. Services are

without merit, and we summarily affirm their dismissal by the district court.

stood dismissal. *Hines* restated the *Vaca* standards without indicating one way or another whether *Vaca* allows a breach of duty of fair representation claim for unintentional union conduct.

In fact, *Vaca, Lockridge,* and *Hines* indicate that *Hoffman* correctly sets a stringent standard for proof of a union's breach of duty. *Lockridge* clearly stated that proof of "arbitrary or bad faith conduct" requires a showing of deliberate disregard or misconduct. *See Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 961 (3d Cir.1980).

It has been suggested that our decisions in *Miller v. Gateway Transportation Co.,* 616 F.2d 272 (7th Cir.1980), and *Baldini v. Local Union No. 1095,* 581 F.2d 145 (7th Cir.1978), hold that some level of negligence may constitute a breach of duty to fairly represent. However, this court reversed summary judgments against employees in both cases because there existed genuine issues of fact concerning the unions' conduct. The records in both cases indicated that the unions may have acted in bad faith. *See Hoffman,* 658 F.2d at 521. For example, the *Baldini* court recognized the plaintiff's argument that union officials misrepresented the status of his arbitration and later told him that they could do nothing for him.

■ We put to rest the argument that *Miller, Baldini,* and more recently *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d at 691, support a different result in this case. *Hoffman* is controlling; a union member must show that his union deliberately failed to properly pursue his claim against the company. *See Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 293 (7th Cir.1975) ("To prove arbitrary or discriminatory treatment, the plaintiff must show that the Union's conduct was intentional, invidious and directed at that particular employee."). Complaints about conduct that is not deliberately discriminatory or arbitrary, or in bad faith, are within the jurisdiction of the National Labor Relations Board. *Lockridge,* 403 U.S. at 301, 91 S.Ct. at 1925; *see Hoffman,* 658 F.2d at 522 (other policy factors supporting more rigorous standard); *see also United Steelworkers of America v. NLRB,* 692 F.2d at 1056–57. *Contra Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082 (9th Cir.1978).

■ No evidence in this case suggests that the Union acted in bad faith toward the plaintiff. In fact, Union representatives adequately prepared for the grievance committee hearing and vigorously defended the plaintiff's position before that tribunal. Union Representative Johnson discussed the case several times with the plaintiff, who was counselled as to what evidence would be helpful at the hearing. Representative Seaman challenged P.T.O. Services' evidence during the hearing, especially arguing that the reinstatement letter the plaintiff signed for a former employer was immaterial to the present action.

Our examination of the record also indicates that the plaintiff was not entitled under the existing collective-bargaining agreement to an automatic appeal from the grievance committee's decision. The agreement established appeal procedures for use only when the Company and the Union failed to reach agreement at the first stage.[2] Here P.T.O. Services and the Union agreed that the plaintiff's claim was meritless.

None of the plaintiff's allegations casts doubt on the Union's claim that it acted conscientiously on his behalf.

### III

■ Finally, we note that the district court dismissed the complaint against

---

2. The relevant section of the collective-bargaining agreement states in part:

   **Section 1.** All grievances relating solely to the discharge or discipline of an employee shall be processed as follows: (a) The Employer and the Union having jurisdiction over the Employee shall within five (5) working days after notice of the grievance meet as a grievance committee and reach a settlement which shall be final and binding. (b) If the parties fail to reach a settlement within the aforesaid time, then within five (5) working days thereafter the matter shall be submitted to the permanent Joint Grievance Committee constituted as set forth in Section 2(b) of this Article. . . .

P.T.O. Services on the grounds that an employee cannot maintain an action against his employer for wrongful discharge under these circumstances unless he first proves a breach of his union's duty of fair representation. We affirm that ruling. *See Cote v. Eagle Stores, Inc.,* 688 F.2d at 35.

AFFIRMED.