Edward C. DOBER, Plaintiff-Appellant,

v.

ROADWAY EXPRESS, INC., Benjamin Carter, and Thomas Kovalik, Defendants-Appellees.

No. 82–2422.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1983.

Decided May 18, 1983.

Robin B. Potter, Chicago, Ill., for plaintiff-appellant.

Andrea R. Waintroob, Chicago, Ill., for defendants-appellees.

Before PELL, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This is a suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), against Roadway Express and two of its officers for breach of a collective bargaining contract. The alleged breach was the subject of a grievance proceeding that the plaintiff, Dober, lost; and the parties agree, as they must, that unless the union violated its duty of fair representation in prosecuting Dober's grievance he cannot relitigate the grievance in a section 301 suit. See *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). The district court granted the defendants' motion for summary judgment on the ground that Dober would not be able to prove such a violation, and Dober has appealed.

A truck driver for Roadway Express, Dober was stopped by a policeman in Chicago for driving on a street that had a weight restriction which his truck exceeded. The practice in Chicago when a driver is stopped for an alleged traffic violation is that the driver surrenders his license to the officer and then "drives on the ticket" until the charge is disposed of and his license returned. But Dober refused to surrender his license and was taken to the police station. The time was 2:30 p.m. Dober telephoned Roadway to bail him out, pursuant to a provision of the collective bargaining agreement which states that "Employees shall be bailed out of jail by the Employer if accused of any offense in connection with the faithful discharge of their duties, and any Employee forced to spend time in jail or in courts shall be compensated at his regular rate of pay." Roadway refused to bail out Dober, on the ground that Dober's violation had been personal in nature because he was driving an unauthorized route; and Roadway suggested that he surrender his license, which he could still have done and been released. But Dober refused to do this and remained in jail for 24 hours until he was brought before a magistrate and released on bond. He was later acquitted in traffic court.

The collective bargaining agreement provides a two-stage grievance procedure. The first stage is a meeting between union and company representatives. Dober was represented by two union representatives, Ligurotis and Navigato. The meeting end-

ed in a deadlock. The second stage is a hearing before a permanent grievance committee consisting of four union and four management representatives. As it happened, Ligurotis was the chairman of this committee. Dober was accompanied to the hearing by a union representative named Coco, but Coco had not talked with Dober before the hearing and remained silent throughout it. Dober argues that the replacement of Navigato by Coco and Coco's failure to interview him before the hearing and to speak at the hearing show that the union did not represent him fairly.

At the hearing, Dober argued that he had not been given specific route directions and that the street where he was arrested had not been posted with weight-restriction signs and he pointed out that he had been acquitted of the traffic charge. The committee decided to award Dober his pay for the balance of the eight hours that he had been scheduled to work on the day of the arrest, but it refused to award him compensation for the 24 hours he spent in jail. That compensation, which he claims to be entitled to by virtue of the provision in the collective bargaining agreement quoted earlier, would amount to $421; and that, plus $150,000 in punitive damages to lend a humorous touch to the complaint, is the amount Dober is seeking in this suit.

In *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981), this court "limit[ed] suits for breach of the duty to fairly represent to instances of intentional misconduct by unions." Although Judge Cudahy, in a concurring opinion, contended that a standard of intentional misconduct was too limited, and cited two earlier Seventh Circuit cases, distinguished but not overruled in *Hoffman—Baldini v. Local No. 1095, United Auto Workers,* 581 F.2d 145, 150–51 (7th Cir.1978), and *Miller v. Gateway Transport. Co.,* 616 F.2d 272, 277 nn. 11–12 (7th Cir. 1980)—that could be read to embrace a broader standard, a series of cases in which different panels of this court have followed *Hoffman* make clear that it is indeed the law of this circuit. See *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 691–92, 694 (7th Cir.1982); *Cote v. Eagle Stores,*

*Inc.,* 688 F.2d 32, 34 (7th Cir.1982) (per curiam); *United Steel Workers of America v. NLRB,* 692 F.2d 1052, 1057 (7th Cir.1982) (per curiam); *Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d 771, 777–81 (7th Cir.1983). The most recent of these decisions, *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200 (7th Cir.1983), could not be more explicit. "*Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981), is the law of this circuit regarding the proof required of a plaintiff seeking to establish a breach of fair representation .... *Hoffman* holds that a union breaches its duty to fairly represent a worker if it deliberately and unjustifiably refuses to represent that worker in processing a grievance." At 202. *Superczynski* goes on to distinguish *Miller* and *Baldini* on a ground that makes them instances of the *Hoffman* principle: "The records in both cases indicated that the unions may have acted in bad faith." *Id.* at 203.

■ Applying the *Hoffman* standard, we agree with the district court that Dober has not raised a triable issue. There is not the slightest indication that the union acted in bad faith in prosecuting his grievance. This is not a case where the union, knowing that the worker has a possibly meritorious grievance but being unwilling to prosecute it effectively because the worker is on the outs with the union or is a member of some racial or other minority or is not a union man, refuses to prosecute the grievance at all or does so in a perfunctory manner by just going through the motions. The darkest picture Dober can paint is that in substituting Coco for Navigato and then not requiring Coco to interview Dober before the hearing the union was inept, lackluster, careless; and as *Hoffman* and the cases following it make clear, negligence, even when gross, does not violate the duty of fair representation.

It would be unrealistic to require workers "grieving" on a part-time basis to come up to some judicially devised standard of competent representation akin to that required of lawyers on pain of being found to have

committed professional malpractice. *Graf v. Elgin, Joliet & E. Ry., supra,* 697 F.2d at 779. The adoption of such a standard in fair representation cases would simply encourage the filing of trivial cases such as this, cases that prevent not only federal judges, but unions and employers, from getting on with more important matters. There is no need for us to assume such a burden in order to protect workers who have meritorious grievances. They do not need our protection against representation that is inept but not invidious. If a local union does an incompetent job of grieving, its members can vote in new officers who will do a better job or they can vote in another union. True, if the majority is oppressing a minority the electoral process will not work, but it is just at that point that the *Vaca* principle comes into play and judicial intervention becomes warranted. Congress has tried to make unions democratic, see Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 *et seq.,* and to the extent that it has succeeded union members enjoy electoral protection against incompetent representation. But union democracy no more guarantees a minority against oppression by the majority than political democracy does. If a union deliberately refuses to process a possibly meritorious grievance for an improper reason, such as that the assigned worker is not a union supporter or adheres to some minority faction of the union—but the precise reason is unimportant—he should be able to bypass the union and sue the company on his own. *Barton Brands, Ltd. v. NLRB,* 529 F.2d 793, 799 (7th Cir. 1976). But there must be intentional misconduct.

Yet even if, contrary to what we have said, the standard were neglience, Dober would lose. Although Coco's lack of preparation and his silence may seem to mark him as the antithesis of the prudent and skillful advocate, the circumstances were special. Ligurotis, a Dober representative in the first stage of the grievance procedure, was the chairman of the second arbitral board. Dober hardly needed another "lawyer" to represent him before a tribunal of which his own "lawyer" was chief judge! And, of course, Coco is not a lawyer, and it is unclear what his efforts (or Navigato's) would have added to Dober's self-representation. An articulate and determined defender of what he conceives to be his rights under the collective bargaining agreement, from which he quoted chapter and verse to the grievance committee, Dober probably was a more effective advocate of his cause than any lay advocate such as Coco or Navigato would have been and if so it was reasonable for Navigato to absent himself and for Coco to keep his mouth shut. Indeed, it would have been hard for any lay advocate to represent Dober with conviction and effectiveness, given the unreasonableness of Dober's refusing to surrender his license to the officer who stopped him, a factor in the grievance committee's decision. Had he surrendered his license, as every normal driver in Chicago does, he could have driven off without penalty, and without any prejudice to his claim of innocence; and he would not have had to spend 24 hours in jail. His injury was self-inflicted—and if not, he was more likely than anyone else to be able to convince the grievance committee that he really was the victim of a breach of the collective bargaining contract.

So it is not, in the end, critical what standard we apply in this case. But there are many suits in this circuit over the duty of fair representation, and potential parties to those suits—workers, unions, employers—and the bar of this circuit have a right to know what standard we follow, so we reaffirm that the standard is intentional misconduct. On the precise meaning of this standard in the duty of fair representation context see *Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d at 778–79. Here we add only the obvious point that the fact that a union decides not to press a worker's grievance does not establish intentional *misconduct.*

The only other point raised on appeal—that Dober was entitled to discovery—is moot. The discovery he requested went to the merits of his grievance rather than to the issue we consider dispositive—whether

the union breached its duty of fair representation.

AFFIRMED.

CUDAHY, Circuit Judge, concurring in the result:

The majority concludes that *Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981), has become "the law of this circuit" by a process of stacking up conflicting panel opinions and awarding the prize to the thickest pile. Judge Bauer in *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200 (7th Cir. 1983), a short time earlier followed very much the same procedure and reached the same questionable conclusion. By any fair reading *Baldini v. Local 1095, UAW,* 581 F.2d 145 (7th Cir.1978), and *Miller v. Gateway Transportation Co.,* 616 F.2d 272 (7th Cir.1980), which were reversals of summary judgments upholding employee discharges, are clearly contrary to the proposition that bad faith or intentional misconduct are the *sine qua non* of a breach of the duty of fair representation.

Judge Pell writing for this court in *Baldini* said:

> Under *Vaca v. Sipes* . . . a union breaches its duty of fair representation when its conduct towards the member is "arbitrary, discriminatory, or in bad faith." *It is noted that the standard is disjunctive. Vaca* expressly rejected an argument that only obvious breaches such as discrimination or hostile treatment would be actionable.

581 F.2d at 150 [emphasis supplied].

Judge Pell attached a footnote to the above-quoted passage as follows:

> Occasional sentences lifted from their context might make it seem that invidious hostility or some sort of malice is always required, *see, e.g., Motor Coach Employees v. Lockridge,* 403 U.S. 274, 300, 301 [91 S.Ct. 1909, 1924, 1925, 29 L.Ed.2d 473] (1971); *Williams v. General Foods Corp.,* 492 F.2d 399, 405 (7th Cir. 1974), but the treatment of the issue in *Hines v. Anchor Motor Freight, Inc.,* su-

*pra* [96 S.Ct. 1048, 47 L.Ed.2d 231] leaves little doubt that such has not become the law. Nor do we think a fair reading of *Lockridge* or *Williams* or other cases cited by the Company to this effect really supports its argument.

*Id.* at 150 n. 5.

Judge Tone, writing for this court in *Miller,* said:

> Although evidence of intentionally hostile or invidious action by a union is clearly relevant to determining whether the duty of fair representation has been breached, *the duty may be breached without scienter on the part of the union.* "[P]atently wrongful conduct such as racial discrimination or personal hostility" is not the sole measure of what is prohibited. *Vaca v. Sipes,* 386 U.S. at 190–91 [87 S.Ct. at 916–17]. . . . A union also breaches its duty *when it arbitrarily ignores or perfunctorily processes a grievance.*

616 F.2d at 277 n. 11 [emphasis supplied].

Judge Bauer in *Superczynski* (and, I take it, the majority here) attempts to distinguish *Baldini* and *Miller* on the grounds that "the records in both cases indicated that the unions *may* have acted in bad faith." At 203 [emphasis supplied]. This is hardly a legitimate basis of distinction in the face of the clear language of the opinions. And for that matter, I think it might be argued in the present case that Coco *may* have acted in bad faith. What Coco's state of mind was on the continuum from slight negligence to violent personal hostility is unknown and, in my view, should not be dispositive of this case.

So I must respectfully assert that *Baldini* and *Miller* stand in stark opposition to the majority's analysis here as well as to the approach in *Superczynski. Baldini* and *Miller* have not been successfully distinguished, and so far as I can tell, the law of this circuit has become a function of how emphatically a panel or panels can assert the proposition of their choice in the face of clear contrary precedent.[1]

1. Further, writing for a unanimous panel in *Baker v. Amsted Industries,* 656 F.2d 1245 (7th

Cir.1981), I said:

On the merits of the analytical dispute, I continue to believe that the Supreme Court was telling us something when it employed the term "arbitrary" disjunctively from "in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 [87 S.Ct. 903, 916, 17 L.Ed.2d 842] (1967). *See Hines v. Anchor Motor Freight Inc.*, 424 U.S. 554, 567–71 [96 S.Ct. 1048, 1057–59, 47 L.Ed.2d 231] (1976). And the view which I hold has, I believe, been adopted by all but one of the other circuits which have addressed the problem. *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981); *Ethier v. United States Postal Service*, 590 F.2d 733, 736 (8th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *Foust v. International Brotherhood of Electrical Workers*, 572 F.2d 710, 715 (10th Cir. 1978); *Beriault v. Local 40, Super Cargoes & Checkers of International Longshoremen's & Warehousemen's Union*, 501 F.2d 258, 263–64 (9th Cir.1974); *Griffin v. UAW*, 469 F.2d 181, 183 (4th Cir.1972); *DeArroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281, 284 (1st Cir.1970). *Cf. Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d Cir.1980).

The matter has been capably dealt with in *Robesky v. Qantas Empire Airways Ltd.*, 573 F.2d 1082 (9th Cir.1978), where the court concluded:

Acts of omission by union officials not intended to harm members may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.

\* \* \* \* \* \*

[I]t is clear that unintentional acts or omissions by union officials may be arbitrary if they reflect reckless disregard for the rights of the individual employee; ... they severely prejudice the injured employee; ... and the policies underlying this duty of fair representation would not be served by shielding the union from

liability in the circumstances of the particular case ....

\* \* \* \* \* \*

The policies underlying the duty of fair representation would be served by affording [the employee] a remedy for the grave injury resulting from the *egregious conduct* of her collective bargaining agent.

*Id.* at 1090, 1091 [emphasis supplied].

The analysis of Judge Kennedy, concurring in *Robesky*, is even more persuasive:

[T]he term "arbitrary" ... should describe the standard we apply on reviewing the *adequacy of the procedures* followed by the union in the processing and resolution of grievances.

\* \* \* \* \* \*

A labor union has some discretion in determining the proper resolution of an employee grievance .... The Supreme Court has required that in exercising this discretion a union should adjust grievances in a manner that is neither arbitrary nor perfunctory .... The standard of review imposed by this rule seems to me to require the kind of scrutiny we use whenever we review a determination of an individual or body entrusted with discretionary power. *We inquire whether the discretion granted has been abused* by a failure to make a reasoned decision. In the case now before us, we should inquire whether the union decisions lacked a rational basis, or whether by perfunctorily processing a grievance so that a reasoned decision was not made, the union foredoomed the grievances.

*Id.* at 1092 [emphasis supplied]. I therefore conclude that the standard as formulated by the Supreme Court and as generally interpreted by the lower federal courts cannot fairly be narrowed to "intentional misconduct."

---

Where ... a union has negotiated a collective bargaining agreement that clothes it with exclusive authority to process employees' grievances against the employer, the union bears a heavy responsibility for processing such claims fairly and *conscientiously*, since

individual employees (including those who opposed representation by their statutorily-imposed agent) are barred from individually seeking redress from their employer's wrongful conduct.

656 F.2d at 1250 [emphasis supplied].

None of this matters in the case before us since Dober has not been severely prejudiced, *see id.* at 1090. He has lost $421—not his job. And nothing has been alleged which seems to suggest any basic taint of the arbitral process. In fact, as Judge Posner points out, in the present context it does not appear that Coco's conduct can be seriously faulted.

Nonetheless, by narrowing the standard to "intentional misconduct" the majority has made it virtually impossible as a practical matter for a discharged employee to successfully hold either his union *or* his employer to account. The only circumstances which might give an employee much practical hope would be an unabashed declaration by a union that it was refusing out of motives of hostility to represent an employee's interest. Otherwise it could simply "forget" to act or stifle a grievance in monumental indifference. For this reason, rooted as it is in the facts of life on the factory floor, the Supreme Court's specification of "arbitrary" as well as "bad faith" actions is both wise and insightful. With all respect, the majority's contrary adoption of its unsupported rule of law is simplistic and invites injustice.

Many discharged employees are undeserving, but some are not. And no one is more powerless than the employee who has incurred the open hostility of his employer *and* the unspoken disfavor or indifference of those in control of his union. The majority speaks of recourse through the democratic process, but this is of scant value to the worker who has been fired. In the present effort to close and lock the courthouse doors, it is no accident that the powerless are the first to suffer. I cannot therefore agree with the views announced today by the majority.