**Kenneth A. GILL, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORP., et al., Defendants.**

No. 83 C 1838.

United States District Court, N.D. Illinois, E.D.

July 27, 1983.

Murray B. Woolley, Chicago, Ill., for plaintiff.

Anthony J. Crement, Jeffrey S. Heller, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant Westinghouse.

Peter R. Meyers, Chicago, Ill., for defendant Union.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Kenneth Gill ("Gill"), a black man, sues Westinghouse Electric Corp. ("Westinghouse") and Local 1105, United Electrical Radio and Machine Workers of America

("Union"). Gill's Amended Complaint (the "Complaint") alleges:

1. Westinghouse and Union imposed racially discriminatory employee discipline on him, in violation of 42 U.S.C. § 1981 ("Section 1981") (Count I).

2. Westinghouse and Union violated their collective bargaining agreement (the "Agreement") by (a) their handling of Gill's resulting grievances and (b) Westinghouse's subsequent layoff of Gill while retaining less senior employees, for which violations Gill claims a right of action under Labor-Management Relations Act § 301, 29 U.S.C. § 185 ("Section 301") (Count II).

Union has now moved in the alternative (1) to be dismissed from both Counts under Fed.R.Civ.P. ("Rule") 12(b)(6) or (2) for summary judgment on both Counts under Rule 56.[1] Westinghouse has filed a parallel motion and alternative motion as to Count II. For the reasons stated in this memorandum opinion and order:

1. Union's motions (a) to be dismissed from Count I and (b) for summary judgment on Count II are granted.

2. Westinghouse's summary judgment motion on Count II is granted.

### Union's Motions

#### Count I

Complaint Count I ¶ 5 alleges:

1. Gill had an accident while employed as a Westinghouse jeep driver.

2. He was disciplined for that accident by a December 3 to 17, 1982 suspension.

3. He received no written notice from Westinghouse concerning either his suspension or his reinstatement.

Count I ¶ 6 alleges white employees received lesser or no discipline for similar workplace infractions.

■ Count I implicates Union only in Paragraph 4, which (1) merely describes Union as the representative of Westinghouse's employees but (2) alleges no facts

---

1. That accurately describes Union's motion as filed, though Union's Mem. ¶ 1 seems to retract its Rule 56 motion as to Count I. See n. 3.

tying Union to the discriminatory discipline allegedly imposed on Gill. Thus Count I simply does not allege any necessary *facts* to show a Section 1981 claim against Union, and that count therefore cannot withstand Union's Rule 12(b)(6) motion.[2] *See Cohen v. Illinois Institute of Technology,* 384 F.Supp. 202, 205 (N.D.Ill.1974), *aff'd,* 524 F.2d 818, 827 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976). It need hardly be added Gill's unsupported conclusory allegations as to Union's violation of Section 1981 cannot salvage Count I on a motion to dismiss. *See Watters v. Harris,* 656 F.2d 234, 240 (7th Cir.1980).[3]

### Count II

Count II assails Union for both (1) the way it handled Gill's grievance on his December 1982 suspension (¶¶ 3–5) and (2) its failure to protect Gill's seniority rights in a January 1983 layoff (¶ 6). Union is entitled to summary judgment as to both those Count II claims.

### 1. *December 1982 Grievance*

■ To establish a Section 301 claim against Union as to its handling his December 1982 grievance, Gill must show Union "deliberately and unjustifiably" refused to represent Gill's interest in processing that grievance—that its misconduct was in bad faith or otherwise intentional, not just negligent. *Dober v. Roadway Express, Inc.,* 707 F.2d 292, 294 (7th Cir.1983); *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200, 202 (7th Cir.1983). Here it is undisputed Union did pursue Gill's grievance—and successfully, for it obtained his reinstatement. See

June 10, 1983 Affidavit of Westinghouse Human Resources Assistant Gerald Keeley ("Keeley Aff.") 2–3; June 10, 1983 Affidavit of Westinghouse Inspector and Union Steward James Scott ("Scott Aff.") 2–4; June 10, 1983 Affidavit of Union Local President Samuel Minnefield ("Minnefield") ("Minnefield Aff.") 2–4; Gill's April 6, 1983 Affidavit ("Gill April Aff.") ¶ 2; February 22, 1983 Affidavit of former Union Local President James Usher ("Usher") ("Usher Feb. Aff.," filed by Gill) ¶ 5.

■ Nevertheless Gill advances what he terms a "grievance" for back pay. But on that score he says only (1) he "assumed" Union would press or follow through on the matter and (2) he was later told by Union getting back to work was more important. Complaint Count II ¶¶ 3–4; Gill April Aff. ¶ 2; Gill's June 6, 1983 Affidavit ("Gill June Aff.") ¶ 13. At most Gill thus contests Union's tactical judgment on his behalf or perhaps its negligence in not pursuing his supposedly "independent" grievance for back pay.[4] Such conduct simply would not constitute a violation of Union's duty of fair representation. *See Dober,* 707 F.2d at 294; *Superczynski,* 706 F.2d at 203.

Thus there is no genuine issue of fact material to Union's liability to Gill for handling his December 1982 grievance. Union is therefore entitled to judgment on that Count II claim as a matter of law. *See Dober,* 707 F.2d at 294–95.

### 2. *January 1983 Layoff*

As to Gill's layoff claim, he does not assert he attempted to exhaust grievance or collective bargaining procedures under the

---

**2.** Gill's retained counsel embarrasses himself by claiming (Ans. Mem. 1) "If you combine the allegations of paragraphs 5 and 6, it is permissible to assume the union is involved ..." Counsel seeks to transform notice pleading into no pleading!

**3.** Grant of summary judgment to Union on Count I would be inappropriate on the present record because it contains little or no evidence to establish or defeat Gill's Count I disparate treatment claim. *Cf. Mason v. Continental Illinois National Bank,* 704 F.2d 361, 362–64 (7th Cir.1983) (rehearsing evidence on grant of sum-

mary judgment to employer-defendant in Section 1981 action).

**4.** Gill June Aff. ¶ 16 claims Minnefield told Gill Union would not pursue the suspension matter "diligently." Similarly *id.* ¶ 15 and Gill April Aff. ¶ 5 imply Gill's *further* pursuit of his suspension grievances would have been futile. But those assertions and implications still raise no question of fact about Union's having acted in good faith and successfully on Gill's behalf. That is dispositive here. *See Dober,* 707 F.2d at 294–96.

Agreement, a precondition to maintaining his Section 301 action against Union. *Macon v. Youngstown Sheet & Tube Co.,* 698 F.2d 858, 860 (7th Cir.1983). True, Gill's does ambiguously allege (Count II ¶ 7) the "futility" of further action (through Union?), apparently an attempt to bring his action under one of the recognized exceptions to the exhaustion requirement. *See Macon,* 698 F.2d at 860. But he submits no affidavit stating *facts* that suggest the futility of his pursuing Union procedures as to his layoff.[5]

 On Union's Rule 56 motion Gill is entitled "only [to] those inferences that follow reasonably from the evidence," *State Bank of St. Charles v. Camic,* 712 F.2d 1140 at 1144 (7th Cir.1983). And here the *only* record evidence shows Gill made *no* effort to pursue Union grievance procedures as to his layoff. Scott Aff. at 4; Minnefield Aff. at 4.[6] Thus, there being no genuine issue of material fact as to Gill's failure to exhaust Union procedures regarding the January 1983 layoff, Union is also entitled to summary judgment as a matter of law as to that Count II claim.[7]

### Westinghouse Motions

 Westinghouse properly rests (Mem. 6–9; R.Mem. 1–4) on Gill's failure (1) to show Union breached its duty to represent him fairly as to his December 1982 grievances and (2) to even allege, let alone show, he exhausted Union grievance procedures as to his January 1983 layoff:

1. Because Union's breach of its duty to Gill is a prerequisite to Gill's Section 301 action against Westinghouse, see *Dober,* 707 F.2d at 293 and *Macon,* 698 F.2d at 862, the grant of summary judgment to Union as to Gill's December 1982 grievance claim is dispositive of Gill's action against Westinghouse on that Count II claim. *See Dober,* 707 F.2d at 295–96.

2. Because exhaustion of Union procedures is a prerequisite to a Section 301 suit against either Union or Westinghouse, *Macon,* 698 F.2d at 860, the grant of summary judgment to Union as to Gill's January 1983 layoff claim is dispositive as to Gill's action against Westinghouse on that Count II claim. *Id.*

### Conclusion

No cause of action has been stated against Union in Count I. There is no genuine issue of material fact, and each defendant is entitled to a judgment as a matter of law, as to Count II. Accordingly Union is (1) dismissed as a defendant from Count I and granted summary judgment on Count II. Westinghouse is granted summary judgment on Count II.

---

5. Usher's May 31, 1983 Affidavit (filed by Gill) ¶ 7 asserts no such facts. There Usher only states in conclusory terms it "would have been futile" to file a grievance "either on the suspension and the terms of reinstatement and/or the discharge or the layoff of GILL." As already discussed, Union's successful activity *for* Gill on the suspension grievance is manifest, despite Gill's apparent dissatisfaction with Union's tactical judgment. Thus the *facts* belie the conclusion. This simply points up the reason Rule 56(e) requires affidavits to speak to matters the affiant could testify to on the stand—a test failed by Usher as to the quoted passage.

6. Gill April Aff. ¶ 5 and June Aff. ¶¶ 15–16, which are inadequate as to Union's summary judgment motion on the suspension claim (see n. 4), are irrelevant as to Union's summary judgment motion on the layoff claim. That is so because those paragraphs do not speak at all of the futility of Union grievance procedures concerning the layoff. Consequently those affidavits do not present evidence by which Gill may defeat Union's motion as to Gill's Count II layoff claim.

7. On the merits of Gill's layoff claim the evidence shows (Keeley Aff. at 3–4) (1) 28 of the 38 employees laid off in January 1983 were senior to Gill and (2) the only two junior employees cited by Gill (February 17, 1983 Affidavit ¶ 4; Gill April Aff. ¶ 4) were shop stewards protected by separate provisions of the Agreement.