Robert G. WAGNER, et al., Plaintiff,

v.

OWENS–ILLINOIS, INC., et al., Defendant.

No. 83 C 5461.

United States District Court, N.D. Illinois, E.D.

May 6, 1985.

MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

The plaintiffs are eleven truck drivers represented by the defendant Chicago

Truck Drivers, Helpers and Warehouse Workers Union ("CTDU") and formerly employed by the defendant Owens-Illinois, Inc. ("Owens"). The plaintiffs bring this action for breach of the collective bargaining agreement against the defendant Owens under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 also confers jurisdiction on this Court over the breach of contract claim. The plaintiffs also bring this action against the CTDU for breach of its duty of fair representation. This Court has subject matter jurisdiction over the claim for breach of the duty of fair representation action under 28 U.S.C. § 1331.

Presently before the Court are the defendants' motions, pursuant to Fed.R. Civ.R. 56, for summary judgment[1] against the plaintiffs. For the reasons set forth below, the defendants' motions are denied.

*Factual Background.*

The eleven plaintiffs were truck drivers employed by Owens to deliver cartons manufactured at Owens' Chicago plant. The plaintiffs were represented by the CTDU. They worked under a collective bargaining agreement negotiated in 1982 and in force at the relevant time. The agreement contained two provisions relevant to this case. The first provision, Article 13, Section 2, provided:

> For the purpose of preserving work and job opportunities for the Employees covered by this Agreement, no work or services presently performed or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned, or conveyed in whole or in part, outside of the jurisdictional area of the Union or to any other plant, person, or non-unit employee, unless otherwise provided in this Agreement. The Employer may subcontract work when all of his Employees are working, except

that in no event shall work presently performed or runs established during the life of this Agreement be farmed out.

The second relevant provision is Article 3, Section 1, which fixed the plaintiffs' hourly salaries at $13.43.

On March 3, 1983, the plaintiffs were informed by Owens' plant manager, Preston Meisel, that Owens' Chicago plant was "getting out of the trucking business." Meisel explained that the company's trucks were old and that the company did not want to replace them. Meisel also stated that all of the plaintiffs would be laid off or terminated on March 9, 1983. Owens refused to negotiate with the CTDU on the terminations, and a strike ensued on March 10 to force Owens to the bargaining table. After two days, Owens agreed to meet with the union, and the strike ended.

On March 11, a union representative told the plaintiffs that they had "won" the strike and would be returned to their jobs at Owens. One week later, however, Owens terminated the plaintiffs and hired a cartage company, Dolphin Cartage, Inc. ("Dolphin"), to deliver the cartons produced at the plant. Owens then liquidated its trucking operation and sent the trucks for use at its other facilities.

On March 18, the CTDU entered into an agreement with Dolphin whereby Dolphin agreed to hire the plaintiffs after they were terminated from Owens. Dolphin, whose employees also were represented by the CTDU, agreed to pay the plaintiffs $11.43 per hour. The CTDU agreed that the plaintiffs would be placed on a seniority list separate from that of Dolphin's regular employees.

On March 25, Mike Keegan, executive director of the CTDU, entered into a letter of understanding with Owens, releasing the company from its obligations under the

---

1. In order to prevail on a motion for summary judgment, a defendant has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1984). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Hermes v. Hein,* 742 F.2d 350 (7th Cir.1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984).

collective bargaining agreement. Keegan also agreed that, in the event that Owens ceased doing business with Dolphin, Owens would re-employ the employees.

The plaintiffs thereafter filed a grievance, pursuant to the collective bargaining agreement between the CTDU and Owens, alleging that Owens had violated the contract provision that prohibited the company from subcontracting its trucking work. The CTDU denied the grievance, stating that the matter already had been settled between the CTDU and Owens through the March 25th letter of understanding.

On May 12, however, at the plaintiffs' insistence, the union convened a Grievance Committee hearing to allow the plaintiffs to fully state their position concerning the grievance. Paul Glover, the union's general counsel, presided as hearing officer, and John Johnson, a CTDU field representative, represented the plaintiffs. A few days after the hearing, Keegan advised the plaintiffs that the denial of their grievance was final.

In their complaint, plaintiffs allege that the CTDU breached its duty of fair representation by failing to pursue an obviously meritorious grievance. According to the plaintiffs, Owens clearly had violated the contract by subcontracting its trucking work to Dolphin. In addition, plaintiffs contend that the CTDU conspired with Owens to violate the plaintiffs' rights under the contract in order to enrich itself through the CTDU Pension and Welfare Fund. Plaintiffs assert that the union acted arbitrarily and in bad faith by failing to pursue their grievance and by inadequately representing them at the Grievance Committee hearing.

*Discussion.*

To show breach of the duty of fair representation,[2] plaintiffs bear the heavy burden of showing that the defendant union deliberately and unjustifiably refused to represent them. *Graf v. Elgin, Joliet and East-*

*ern Railway Co.,* 697 F.2d 771 (7th Cir. 1983). Proof of negligence or poor judgment by a union in handling a grievance is not sufficient to support an action for unfair representation. *Hoffman v. Lonza,* 658 F.2d 519 (7th Cir.1981). The action based on a breach of the duty fairly to represent cannot be grounded on some action or omission by the union that results in an employee not receiving a "fair" hearing on the merits of the grievance. The legal action based on the union's duty fairly to represent might be more properly labeled as an action for the union intentionally causing harm to an employee involved in a grievance proceeding. *Hoffman, supra* at 522. Thus, to survive the defendants' motions for summary judgment, plaintiffs must show that the defendant CTDU intentionally caused them harm by improperly handling their grievance.

Plaintiffs contend that the union's denial of their grievances is, by definition, arbitrary and in bad faith. In *Hoffman,* the court interpreted the terms "arbitrary" and "bad faith" to mean intentional wrongdoing by the union. *Hoffman, supra* at 521. A union may deny a grievance that it honestly believes is without merit. *Dober v. Roadway Express,* 707 F.2d 292 (7th Cir. 1983); *Graf* at 779. Thus, the denial itself does not, by definition, constitute intentional wrongdoing. The relevant question is whether the CTDU honestly and in good faith believed that the plaintiffs' grievance was meritless. If it had some other hostile or discriminatory motive for not pursuing the grievance, then the CTDU will have breached its duty to fairly represent the plaintiffs.

The union's honest belief in the merit of the grievance is an issue of material fact that is in dispute between the parties. Plaintiffs and Owens both indicate in their memoranda that the union originally perceived Owens' termination of the plaintiffs as a violation of the contract's subcontract-

---

**2.** Unless the union has breached its duty of fair representation, an employee may not sue for breach of a collective bargaining agreement. *Graf v. Elgin, Joliet and Eastern Railway Co.,* 697 F.2d 771 (7th Cir.1983). Therefore, this Court does not address the question of whether Owens violated the subcontracting provision of the collective bargaining agreement.

ing provision. Plaintiffs claim that CTDU representatives told them that Owens was violating the provision and that the union intended to get the plaintiffs' jobs back at Owens. (Plaintiffs' Affidavits at 5.) Similarly, Owens concedes that the union's position during negotiations after the strike was that Owens had violated the subcontracting provision of the 1982 agreement. (Owens' Statement of Material Facts at 10.) The CTDU, however, states that "[i]t was never the Union's position that the Company had violated the subcontracting provision of the Collective Bargaining Agreement...." (CTDU Reply Memorandum at 2.) Thus, the union's honest belief in the merit of the grievance remains in dispute.[3]

Plaintiffs also contend that the CTDU was motivated to breach its duty of fair representation by its desire for financial gain. According to the plaintiffs, the CTDU intentionally mishandled the plaintiffs' grievance in exchange for Owens' enrichment of the CTDU Pension and Welfare Fund. The plaintiffs allege that, through its conspiracy with Owens, the CTDU was able to obtain statutorily required withdrawal payments from Owens and regular contributions to the fund from Dolphin. The plaintiffs claim that this "double contribution" to the pension fund benefited the CTDU because of its "close connection" with the fund. As proof of this allegation, the plaintiffs point to the fact that the union's executive director is also trustee of the pension fund. The defendants, however, deny any improper connection between the fund and the CTDU. Thus, an issue of material fact exists as to whether the union intentionally mishandled the plaintiffs' grievance in order to enrich itself improperly through the pension fund.

If this Court accepts plaintiffs' version of the facts, as it must for purposes of defendants' motion for summary judgment, plaintiffs' allegations demonstrate that the CTDU breached its duty to fairly represent the plaintiffs.

*Conclusion.*

This Court finds that issues of material fact are in dispute that preclude summary judgment. Specifically, plaintiffs and CTDU disagree as to whether the CTDU honestly and in good faith believed that the plaintiffs' grievance lacked merit. Additionally, the question remains as to whether the CTDU's motive for the intentional mishandling of their grievance was to enrich its pension fund. For these reasons, the defendants' motions for summary judgment are denied.

---

**3.** Plaintiffs also allege that they were not properly represented at the Grievance Committee meeting. They contend that their CTDU representative, Johnson, failed to meet with them before the day of the hearing, did not prepare them, and said nothing during the hearing. Plaintiffs further contend that the hearing was biased because the union's general counsel served as the hearing officer. Plaintiffs contend that the union's performance at the hearing constitutes a failure of the duty of fair representation. The Seventh Circuit, however, has held that while a union representative's lack of preparation and silence during a hearing may "mark his as the antithesis of the prudent and skillful advocate," it does not prove a breach of the duty of fair representation. *Dober v. Roadway Express, Inc.,* 707 F.2d 292, 295 (7th Cir.1983). Further, the court was not disturbed by the fact that a union official presided at the grievance hearing. *Id.*