William J. LEGG, Plaintiff,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 364, et al., Defendants.

No. S85–445.

United States District Court,
N.D. Indiana,
South Bend Division.

June 1, 1988.

Donald J. Berger, South Bend, Ind., for plaintiff.

W.R. Groth, Indianapolis, Ind., John E. Doran, South Bend, Ind., Brian F. Leonard, St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff William J. Legg brings this action against the Chauffeurs, Teamsters and Helpers Local Union 364 (the "Union") and his former employer, Murphy Motor Freight Lines, Inc. (the "Company"), alleging that the Company breached its collective bargaining agreement with the Union by discharging him, and that the Union breached its duty of fair representation in processing his grievance over his discharge. Jurisdiction is vested in this court pursuant to 29 U.S.C. § 185. The cause is before the court on the Union's summary judgment motion. Fed.R.Civ.P. 56. For the reasons that follow, the court finds that no genuine issues of material fact exist and the defendant Union is entitled to judgment as a matter of law.

### I. *Introduction*

An action such as this is known as a hybrid breach of contract/duty of fair representation suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Mr. Legg alleges that the Union unfairly represented him at the grievance hearing because his Union representative was unprepared.[1] In his deposition, Mr. Legg also asserted that the Union represented him improperly because it did not tell him the procedure he should have followed for his grievance. Specifically, he learned only after the Local Grievance Committee meeting that his grievance should have gone to Indianapolis rather than South Bend.[2] For this breach of duty, Mr. Legg seeks damages from the Union.

Mr. Legg alleges that the Company discharged him unfairly because he was given no warning notice before his discharge as required by Article 46 of Central States Over-the-Road Supplemental Agreement. He seeks relief from the Company in the form of reinstatement, back pay with prejudgment interest, attorney fees and costs. On April 13, 1987, the Company filed notice of its filing of a Voluntary Petition under Chapter 7 of Title 11 of the United States Code; the automatic stay of Section 362 of the Bankruptcy Code is in effect.

### II. *Standard of Review of Summary Judgment Motions*

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 841 F.2d 1347 (7th Cir.1988); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County,* 836 F.2d 376 (7th Cir. 1988). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. University of Wisconsin,* 841 F.2d 737 (7th Cir.1988).

The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States,* 803 F.2d 1421 (7th Cir.1986), or upon conclusory allegations in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007 (7th Cir.1983). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Vachet v. Central Newspapers, Inc.,* 816 F.2d 313 (7th Cir.1987), as long as

---

1. Complaint, ¶ 13.

2. Mr. Legg's Deposition, pp. 32–33, 52–53.

the inferences are reasonable. *Davis v. City of Chicago*, 841 F.2d 186 (7th Cir. 1988). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Wainwright Bank & Trust Co. v. Railroadmen's Federal Sav. & Loan Ass'n*, 806 F.2d 146 (7th Cir.1986).

The Union's summary judgment motion must be addressed with these standards in mind.

### III. *Duty of Fair Representation*

#### A. *Material Facts*

The Union asserts that the following facts are undisputed: Mr. Legg worked as a truck driver for the Company from May, 1983 until his discharge on December 14, 1984. While employed, Mr. Legg was in a bargaining unit represented by the Union. On December 13, 1984, after driving from South Bend, Indiana to Buffalo, New York on a Company dispatch, Mr. Legg consumed ten to twelve beers with Ron Gouker in a bar.[3] Later that day, New York police arrested Mr. Legg on I–90 (the New York thruway) for driving his truck in the wrong direction. A breathalyzer test showed that Mr. Legg had a blood alcohol content of .17, and he was charged with driving while intoxicated and reckless driving.[4] Mr. Legg was found guilty, although he could not remember whether it was for driving while intoxicated or driving under the influence, fined $500.00,[5] and his driver's license was suspended for ninety days.[6]

In a letter dated December 14, 1984, the Company informed Mr. Legg that he was discharged for drunkenness due to the New York incident. Wayne Nellis, a business agent of the Union, assisted Mr. Legg in filing a grievance three days later. Mr. Legg met with Robert Warnock, the Union president, and Mr. Nellis to discuss different ways of obtaining reinstatement.[7]

On January 28, 1985, the Union presented Mr. Legg's grievance before the Local Joint Grievance Committee. Before the hearing, Mr. Nellis suggested to Mr. Legg that he wait until after the resolution of the New York charges to pursue his grievance.[8] Mr. Legg rejected that advice and the hearing proceeded; Mr. Legg testified that he drove the wrong way on the thruway.[9] Mr. Nellis presented argument and evidence on Mr. Legg's behalf, including a letter he obtained from Mr. Legg's attorney in the New York criminal case.[10] The local grievance committee denied Mr. Legg's grievance and notified Mr. Legg on January 28, 1985 of its decision to uphold the discharge.[11] No appeal was taken; the collective bargaining agreement did not provide for one.[12]

In his response, Mr. Legg asserts that the following disputed facts foreclose summary judgment:

(1) although the characterization of his blood alcohol content could lead one to believe intoxication was the direct cause of his driving a company truck the wrong way on a one way street, a trier of fact could find his improper driving resulted from the myriad of road signs, and exit and entrance ramps, located at this exit of the New York thruway;

(2) Mr. Legg was not found guilty of impaired driving until some time in 1986, demonstrating that he had neither admitted nor been convicted of improper driving at the time of his discharge;

(3) Mr. Legg had a spotless record until this incident and therefore was not practiced in the procedures of the labor/management agreement; he had to

---

3. Mr. Legg's Deposition, p. 12.

4. Deposition Exhibit G.

5. In his response to the summary judgment motion, Mr. Legg asserted that he was convicted of driving while impaired.

6. Mr. Legg's Deposition, p. 35.

7. Mr. Legg's Deposition, pp. 22–23.

8. Mr. Legg's Deposition, p. 48; Deposition Exhibit F.

9. Deposition Exhibit A, p. 2.

10. Deposition Exhibits A, G.

11. Mr. Legg's Deposition, p. 51.

12. Mr. Legg's Deposition, p. 54.

rely on the business agent of the Union, Wayne Nellis, to assist him through the process. Mr. Legg argues that he was not informed that he could have taken his grievance to Joint Committees in Chicago and Indianapolis. He also argues that the Union failed to answer his questions or assist him in presenting his grievance to the local joint committee; and

(4) Mr. Legg argues that at the time of the offense he was with another acknowledged member of the Teamsters for Democratic Union, an organization in opposition to the present Teamster leadership.

Although he asserts that factual issues are disputed, Mr. Legg has presented no affidavits or other admissible evidence to show that evidence exists to support these factual assertions.

The Union's reply brief notes that Mr. Legg's theory of his case is metamorphic. His allegations have evolved from his complaint, which alleged only that he was represented unfairly because Mr. Nellis was unprepared during the grievance hearing, to assertions in his deposition that the Union neglected to tell him that he could have presented his grievance before another grievance committee other than the local committee in South Bend, to assertions in his summary judgment response that the Union's misconduct was somehow due to undocumented Union animosity toward Ron Gouker. The Union argues that Mr. Legg is confined to the allegation set forth in his complaint: that Mr. Nellis was unprepared to present the case adequately at the grievance hearing.

### B. Analysis

The outcome is the same whether the court views Mr. Legg's original allegation of unfair representation by Mr. Nellis or the failure to advise Mr. Legg of alternate locations to file his dispute or the alleged animosity of the Union toward Mr. Legg as a result of his association with Mr. Gouker. Mr. Legg has failed to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 106 S.Ct. 2552–53.

To contest the merits of his discharge, Mr. Legg must show that the Union violated its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining union is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

In the Seventh Circuit, a union breaches its duty of fair representation only if "it intentionally causes harm to an employee". *United Independent Flight Officers v. United Airlines,* 756 F.2d 1274 (7th Cir.1985), *citing Hoffman v. Lanza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981); *see also Camacho v. Ritz–Carlton Water Tower,* 786 F.2d 242 (7th Cir.), *cert. denied* 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *Dober v. Roadway Express, Inc.,* 707 F.2d 292, 294 (7th Cir.1983); *Adams v. The Bud Company,* 846 F.2d 428 (7th Cir. 1988). Under *Hoffman,* a plaintiff alleging breach of the duty of fair representation bears the burden of proving deliberate or intentional misconduct on the union's part. *Hoffman v. Lanza,* 658 F.2d at 1282, *citing Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200, 202–203 (7th Cir.1983); *Graf v. Elgin, Joliet & Eastern Railway Co.,* 697 F.2d 771, 777–81 (7th Cir.1983). This duty "is not breached, and the employee has no remedy without substantial evidence of fraud, deceitful or dishonest conduct". *Hoffman v. Lanza,* 658 F.2d at 522.

The Union provided Mr. Legg with representation concerning his discharge.[13] No affidavit or deposition testimony supports

---

**13.** As noted at page 387, *supra,* Mr. Nellis and other union officials talked with Mr. Legg. Mr. Nellis presented argument and evidence on Mr. Legg's behalf, including a letter he had obtained from Mr. Legg's attorney in the New York criminal case. (Legg Dep., Exhibits A, G). Before the hearing, Mr. Nellis suggested that Mr. Legg await the outcome of the New York charges to pursue his grievance. (Dep., p. 48; Exhibit F).

Mr. Legg's allegation of improper advice concerning the best location to file his grievance. The Union argues that according to Article 45 of the Contract, Mr. Legg's grievance was properly heard by the local joint committee in South Bend. The collective bargaining agreement allows a grievant to go before other grievance committees only if the local or lower committees deadlock.

■ The Union asserts that Mr. Warnock, who allegedly said that Mr. Legg should have filed somewhere else, never made the statement. Even if he had made such a statement, the Union argues, there is no showing that the statement was correct. This factual dispute does not, however, rise to the level of a genuine issue of material fact. A union is not liable for "careless or boneheaded conduct". *Camacho v. Ritz–Carlton Water Tower*, 786 F.2d at 244. Whether Mr. Warnock made the statement or whether his advice was correct does not affect whether the Union conduct rises to intentional misconduct.

Mr. Legg said in his deposition that he looked at the Union as a lawyer.[14] To "require workers 'grieving' on a part time basis to come up to some judicially devised standard of competent representation akin to that required of lawyers on pain of being found to have committed malpractice" is an untenable standard. *Dober v. Roadway Express, Inc.*, 707 F.2d at 294–295, *citing Graf v. Elgin, Joliet and Eastern Ry. Co.*, 697 F.2d 771 (7th Cir.1983).

The Union's alleged hostile attitude toward Mr. Legg because of his association with Ron Gouker finds support only in conclusory remarks; no affidavit, deposition or other admissible evidence supports the conclusion. A showing of hostility can be made by citing concrete evidence of personal animus, but the plaintiff must show more than union awareness of his political activities in opposition to them. *Winters v. Teamsters Local 639*, 569 F.2d 146, 150 (D.C.Cir.1977). Mr. Legg has offered no such evidence.

14. Mr. Legg's Deposition, p. 33.

Coupling this Circuit's requirement that a plaintiff prove "intentional misconduct" in cases alleging breach of the duty of fair representation, with the summary judgment standards set out in *Celotex*, *Anderson* and *Matsushita*, the court must find that the Union has satisfied its summary judgment burden and Mr. Legg has failed to come forward with any genuine issue of material fact. However harsh the discharge may have been, the record contains nothing to support a reasonable inference that the Union violated its duty of fair representation. Accordingly, the court GRANTS the defendant Union's motion for summary judgment as a matter of law.

SO ORDERED.