Rebecca WILLIAMS, Barbara Parrow, Claudesta Brooks, Plaintiffs,

v.

NATIONAL CAN CORPORATION, an Illinois corporation; Local 7955, United Steelworkers of America, AFL–CIO & CLC; and the United Steelworkers of America, AFL–CIO & CLC, Defendants.

No. S 83–149.

United States District Court, N.D. Indiana, South Bend Division.

March 11, 1985.

Timothy J. Hartzer, South Bend, Ind., for plaintiffs.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., Allan J. Mindel, Merrillvill, Ind., Richard W. Snyder, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is an action brought pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, by three employees, who were laid off by their employer, against their employer for breach of a collective bargaining agreement and against the union for breach of its duty of fair representation. The underlying issues involve the employees' entitlement to vacation pay and severance pay. The plaintiffs have filed a Motion for Class Certification and the defendants have filed motions for summary judgment. The parties have fully briefed the issues and oral argument has been heard on the motions for summary judgment. The depositions of Barbara Parrow and Rebecca Williams are hereby published.

### I.

The record discloses the following undisputed facts. National Can Corporation (Company) operates a manufacturing facility at 300 N. Fail Road, LaPorte, Indiana, which plant has not been permanently shut down. Production and maintenance employees at the plant are represented by Local 7955, United Steelworkers of America, AFL–CIO & CLC (Local 7955) and the United Steelworkers of America, AFL–CIO & CLC (USWA) under a Collective Bargaining Agreement dated the 16th day of February, 1981 (Agreement) which, by extension, expires February 16, 1986. In the fall of 1982, many of the employees represented by Local 7955 were laid off by the Company though the exact number is not clear from the record. Meetings between the employees and Company management were held near the time of layoff at which meetings matters concerning the layoff were discussed.

On November 29, 1982 an interoffice correspondence was directed to all employees by Mel Spiegel, Industrial Relations Manager for the Company, with respect to eligibility for 1983 vacation benefits. Shortly thereafter, Larry L. Wood, President of Local 7955, met with Mel Spiegel and informed him that Local 7955 did not agree with the Company's position on 1983 vacation benefits and was going to check with Gene Chlebowski, Staff Representative for USWA, with respect to the matter. After checking with Gene Chlebowski, Larry Wood reported at the regular meeting of Local 7955 on December 16, 1982 that he had been advised by the staff representative that the International Office had said that the Company's position was correct with respect to vacation benefits.

Larry Wood continued to receive complaints with respect to the vacation pay issue and filed a written grievance with the Company with respect thereto on January 13, 1983. The Company denied the grievance on January 14, 1983 and Staff Representative Gene Chlebowski appealed the grievance to the Third Step on January 24, 1983. At the Third Step Meeting on March 14, 1983, Gene Chlebowski argued in favor of the grievance but then withdrew the grievance after the Company's citation to other adverse arbitration awards on the same issue.

Larry Wood also received a request from plaintiff, Rebecca Williams, to file a grievance protesting the Company's refusal to pay severance pay to the laid off employees. Rebecca Williams indicated that she felt that the plant was closed with respect to her because she had been informed that she would never be recalled. Larry Wood consulted with Staff Representative Chlebowski; David Gore, a labor lawyer who had represented USWA; Tom Duzak, then head of the USWA's Department of Insurance, Pensions and SUB and the USWA's negotiator with the Can Industry with respect to the severance pay issue. Based on the language of the Agreement, all of these individuals indicated that the severance pay claim was without merit as the plant had not been permanently closed. No grievance on the severance pay issue was filed.

Internal union charges, dated April 18, 1983, were filed with Local 7955 against Larry Wood and Eugene A. Chlebowski

and signed by plaintiff Rebecca Williams, alleging violations of the USWA Constitution and the duty of fair representation by refusing to file a severance pay grievance for the laid off employees and by acquiescing in the withdrawal of the grievance concerning vacation pay for laid off employees. A Trial Committee, elected in accordance with the USWA Constitution, found Larry Wood not guilty of the charges. The Trial Committee's report was approved by vote of the membership of Local 7955 at a regular meeting held on June 28, 1983.

The Master Agreement between the Company and USWA in effect at all relevant times contained the following language:

Article IIV—Vacations

*Section 1.* Employees hired on or after November 1, 1962 shall receive vacation on the following basis:

(a) Eligibility—An employee is eligible for vacation when he completes a total of twelve (12) months of continuous service with the Company and has received at least twenty-six (26) pay checks. If an employee receives less than twenty-six pay checks during the first twelve (12) months of continuous service, he shall not become eligible until he has received twenty-six (26) pay checks.

(b) Amount—An employee who has established vacation eligibility as provided above shall be granted one week of vacation to commence prior to December 31 of the year in which his eligibility is established.

Thereafter, such eligibility will continue during each following calendar year he continues in the employ of the Company and performs work for which he is compensated by the Company, he shall be granted and shall take vacation on the following basis. . . .

Section 5. Terminations.

(b) An employee who is laid off for an indefinite period before he has been granted a vacation shall be paid vacation allowance at the time such indefinite layoff commences, limited to the

vacation for which he was eligible at that time and would have been granted during the current year had he continued to work for the Company. Any layoff extending beyond December 31 shall be considered as indefinite layoff for the purpose of the vacation plan.

Article XVII—Local Supplements, Customs and Practices

Section 2. Established local customs and practices, written or oral, which are currently in effect and are neither covered by nor in conflict with this Agreement shall continue in effect for the term of this Agreement.

Section 3. Established local customs or practices, written or oral, which are currently in effect and provide benefits in addition to or in excess of those provided in this Agreement shall continue in effect for the term of this Agreement, unless modified or eliminated by mutual agreement.

Section 4. Local customs or practices which may hereafter be established by mutual agreement shall be reduced to writing. Any practice or custom hereafter established by mutual agreement or otherwise found to be in violation of the provisions of this Agreement shall not be enforceable to the extent that it conflicts with the terms of this Agreement unless allowed to continue by mutual agreement between the International Union and the Executive Officers of the Company.

The Supplemental Unemployment Benefit Plan Agreement (SUB Plan Agreement) in effect at all relevant times contained the following provision:

Severance Payments

5.0 If the company shall close a plant permanently, any employee whose continuous service shall not have been broken prior to the date of closing, whose job shall be discontinued and who does not transfer to another Company plant (whether or not a plant as defined in this Plan) and who becomes entitled to a severance allowance in accordance with this Agreement, will, except as provided in Paragraph 5.3,

receive a single severance payment determined as follows:....

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only where the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.Proc. 56(c). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Big O. Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984). However, when a properly supported summary judgment motion is made, the nonmoving party may not rest upon his pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.Proc. 56(e); *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984). When considering a motion for summary judgment, the court must view the evidence, and the reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Id.*

In the case presently before the court, both the Company and the Union have moved for summary judgment. It is clear that in order for plaintiffs to litigate their grievances in a section 301 suit, they must first prove that the Union violated its duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 186–87, 87 S.Ct. 903–04, 17 L.Ed.2d 842 (1967). Accordingly, that issue will be dealt with first.

## III.

■ In their brief, the plaintiffs argue that the Seventh Circuit has not issued an *en banc* opinion on what standard should be applied in fair representation cases and therefore this court should not grant summary judgment because there are genuine issues of material fact under the broader standard they urge this court to adopt. Such a position is not supported by law, however, in this circuit. In *Dober v. Road-*

*way Express, Inc.,* 707 F.2d 292 (7th Cir. 1983), the Seventh Circuit stated:

In *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981), this court "limit[ed] suits for breach of the duty to fairly represent to instances of intentional misconduct by unions." Although Judge Cudahy, in a concurring opinion, contended that a standard of intentional misconduct was too limited, and cited two earlier Seventh Circuit cases, distinguished but not overruled in *Hoffman-Baldini v. Local No. 1095, United Auto Workers,* 581 F.2d 145, 150–51 (7th Cir.1978), and *Miller v. Gateway Transport. Co.,* 616 F.2d 272, 277 nn. 11–12 (7th Cir.1980)—that could be read to embrace a broader standard, a series of cases in which different panels of this court have followed *Hoffman* make clear that it is indeed the law of this circuit. See *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 691–92, 694 (7th Cir.1982); *Cote v. Eagle Stores, Inc.,* 688 F.2d 32, 34 (7th Cir. 1982) (per curiam); *United Steel Workers of America v. NLRB,* 692 F.2d 1052, 1057 (7th Cir.1982) (per curiam); *Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d 771, 777–81 (7th Cir.1983). The most recent of these decisions, *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200 (7th Cir.1983), could not be more explicit. "*Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981), is the law of this circuit regarding the proof required of a plaintiff seeking to establish a breach of fair representation.... *Hoffman* holds that a union breaches its duty to fairly represent a worker if it deliberately and unjustifiably refuses to represent that worker in processing a grievance." At 202. *Superczynski* goes on to distinguish *Miller* and *Baldini* on a ground that makes them instances of the *Hoffman* principle: "The records in both cases indicated that the unions may have acted in bad faith." *Id.* at 203.

707 F.2d at 294.[1] Accordingly, the standard for determining whether a union

---

1. As the concurring opinion of Judge Cudahy at 707 F.2d 296 demonstrates all the circuit judges

are not completely of one mind on the issue decided in *Dober.* However, the majority opin-

breached its duty of fair representation is intentional misconduct-negligence, even when gross, does not violate the duty of fair representation.

### A.

In the case presently before the court, the plaintiffs have failed to raise a triable issue of fact with respect to the union's duty of fair representation on the severance pay issue. The union did not deliberately and unjustifiably refuse to process plaintiffs' grievances on the issue of severance pay and did not act in bad faith with respect thereto.

 It should be noted that a union's decision not to press a worker's grievance does not establish intentional misconduct. *Dober v. Roadway Express, Inc.*, 707 F.2d at 295. Accordingly, the union's decision not to file a grievance over the severance pay issue in this case is not *prima facie* evidence that the union violated its duty of fair representation. Further, the evidence with respect to the union's decision not to submit a grievance on the severance pay issue shows that it was acting justifiably and the plaintiffs' have not submitted any evidence to the contrary. The union based its decision on contractual language, namely, Paragraph 5.0 of the Supplemental Unemployment Benefit Plan Agreement (SUB Plan Agreement) which conditions entitlement to severance pay on the permanent closing of a plant. There is no evidence in the record that the plant was permanently closed at the time Rebecca Williams requested the union to file a grievance on the issue nor is there any evidence of such a permanent plant closing at this time. The evidence further shows that Larry Wood, President of Local 7955, consulted with several other persons with direct knowledge of the provision in question and they all concurred with his interpretation. Thus, under *Dober*, the defendant union has not engaged in intentional misconduct with respect to the severance pay issue and

therefore did not violate its duty of fair representation.

Further, even if this court were to analyze the union's actions with respect to the severance pay issue under the alleged different standards of *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272 (7th Cir.1980) and *Baldini v. Local Union No. 1095, United Auto Workers*, 581 F.2d 145 (7th Cir.1978) as urged by the plaintiffs, this court finds no breach of the union's duty of fair representation. The actions of the union in this case do not parallel or even approximate the conduct of the unions in those cases. The requested grievance on severance pay rested solely on an interpretation of the contractual language of the SUB Plan Agreement. The material facts involved were not disputed—there was a substantial layoff of plant employees but there were some employees still working at the plant. Larry Wood investigated the meaning of the contractual language at issue. There is no evidence that the union acted in a discriminatory manner with respect to the plaintiffs nor that it arbitrarily ignored or perfunctorily handled the requested grievance. Larry Wood reported at regular meeting of Local 7955. Even the union, under its own internal procedures, found that Larry Wood and Eugene Chlebowski had not breached their duty of fair representation. Accordingly, defendant union's motion for summary judgment on the severance pay issue will be granted.

### B.

 With respect to the vacation pay issue, the same result must be reached with respect to the union's duty of fair representation. The evidence does not reveal any intentional misconduct on the part of the union. The union filed a grievance on the vacation pay issue which was denied by the Company. They appealed the grievance to the Third Step and made a good faith argument in favor of plaintiffs' positions at the meeting. The union withdrew

---

ion of Judge Posner concurred in by Judge Pell states the current law in this circuit in no uncertain terms. The reasoning and result of the

majority opinion are clearly applicable here and compel the result here announced.

the grievance after the Company cited other adverse arbitration awards. The plaintiffs' argue that the grievance was untimely filed and that the circumstances surrounding the union's withdrawal of the vacation pay issue are therefore questionable rendering summary judgment inappropriate on this issue. Even assuming that the grievance was untimely filed and that it played a part in the decision to withdraw the grievance, the defendant union cannot still not be found guilty of intentional misconduct as defined by the Seventh Circuit. *See Dober v. Roadway Express, Inc.,* supra; *Graf v. Elgin, Joliet and Eastern Railway Co.,* 697 F.2d 771, 778–79 (7th Cir.1983); *Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981). Accordingly, defendant union's motion for summary judgment on the vacation pay issue is denied.

### IV.

■ It is clear from the foregoing that the plaintiffs have failed to show that the union breached its duty of fair representation. Thus, under *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the plaintiffs cannot maintain a § 301 suit against the Company. However, even if the union had breached its duty of fair representation, the plaintiffs have failed to show that either of the underlying grievances is meritorious.

### A. COMPANY–SEVERANCE PAY

■ Severance pay, under the SUB Plan Agreement, is paid only when a plant has been permanently closed. The only issue, therefore, with respect to the Company's alleged breach of contract on the severance pay issue is a factual one: Was the LaPorte plant of National Can Corporation permanently closed at any time from September 1982 to the present? The answer, based on undisputed facts, must be no. The affidavits of Larry L. Wood and Eugene A. Chlebowski and the depositions of Rebecca Williams (p. 43) and Barbara Parrow (p. 34) clearly indicate that the plant is operating and is not permanently closed. The plaintiffs, in opposition to defendant company's motion for summary judgment, argue that they viewed their entitlement to severance pay as deriving from a *de facto* permanent shutdown of operations at the plant because they were placed on "permanent" layoff. They have not, however, given the court any legal or factual basis for asserting such a position and the court can find none to support such an assertion. The SUB Plan Agreement contains specific language with respect to layoff and with respect to entitlement to severance pay. There are no provisions with respect to a *de facto* permanent shutdown and this court is not at liberty to modify the agreements in question absent an ambiguity, which is not present here. Accordingly, defendant Company's motion for summary judgment as to the severance pay issue is granted.

### B. COMPANY–VACATION PAY

The specific provisions in the Agreement with respect to vacation pay benefit are set forth above and basically provide that an employee becomes eligible for one week of vacation upon completion of one full year and receipt of twenty-six pay checks. Thereafter, the employee is entitled to additional vacation, as set forth in the Agreement, during each succeeding calendar year in which the employee performs work for which he is compensated. *See* Article CXIV of Agreement. The plaintiffs recognized that this provision contractually controls vacation eligibility and acknowledged that under this clause they would not be entitled to vacation benefits. (Williams Dep. pp. 49–51; Parrow Dep. pp. 24–26). Plaintiffs' argue, however, that this provision should not apply for two reasons: (1) they believed that vacation pay was to be based on work performed during the prior calendar year; and (2) past practices by the Company in relation to vacation pay benefits.

The plaintiffs submitted eight affidavits relating to the "believe" held by various laid off employees that they were entitled to vacation pay in 1983 based upon work performed in 1982 and that they were

informed by representatives of National Can that they could claim vacation pay as of January 1, 1983. Two of the named plaintiffs also testified with respect to past practices of the Company with respect to vacation benefits. This evidence, however, even considered in the light most favorable to the plaintiffs, cannot alter the entry of summary judgment on the vacation pay issue in favor of the Company under Indiana law.

 Under Indiana law, a contract is to be interpreted to mean what on its face it purports to mean, unless from the entire contract and the subject matter thereof, it is clear that some other meaning was intended. *Fort Wayne Cablevision v. Indiana & Michigan Electric Co.,* Ind.App., 443 N.E.2d 863 (1983). Further, the court must give effect to the meaning and intention of the parties as expressed in the language of the contract and where the terms of the contract are plain and free from uncertainty, it is not the proper function of the court to use any rules of interpretation or construction in determining the provisions of their agreement. *See, e.g., THQ Venture v. S.W., Inc.,* Ind.App., 444 N.E.2d 335 (1983); *Fort Wayne Cablevision v. Ind. & Mich. Elec. Co., supra,* at 866. Thus, where a contract is not ambiguous, the court must only consider the language contained in the contract to determine the parties' intentions and may not consider the secret design in one party's mind or the conduct of the parties. 6 I.L.E. Contracts §§ 113, 134 (1959). The test for determining whether a contract is ambiguous is whether reasonable men would find the contract subject to more than one interpretation, *see, e.g., Fort Wayne Cablevision v. Ind. & Mich. Co., supra,* and is a matter to be determined by the court as a question of law. *Kokomo Veterans, Inc. v. Schick,* Ind.App., 439 N.E.2d 639 (1982).

 In the case presently before the court, the provisions with respect to entitlement to vacation benefits are not ambiguous. The terms are clear and unambiguous

and embody a definite meaning. The Agreement specifically states that:

> [s]uch eligibility will continue during each following calendar year he continues in the employ of the Company *and* performs work for which he is compensated by the Company, ...

This language clearly requires that an employee must perform work in each calendar year and be compensated therefore in order to be eligible for vacation pay for that year. Thus, defendant Company's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the summary judgment motions of National Can Corporation; Local 7955, United Steelworkers of America, AFL-CIO & CLC; and United Steelworkers of America, AFL-CIO & CLC are GRANTED. Plaintiffs' Motion for Class Certification is DENIED as moot. SO ORDERED.