**Bobby J. ANDREWS, Plaintiff,**

v.

**HI–WAY DISPATCH, INC., Defendant.**

Civ. No. F 85–77.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 19, 1986.

Stephen Laudig, Indianapolis, Ind., for plaintiff.

Herbert A. Spitzer, Jr., Browne, Spitzer, Herriman, Browne, Stephenson & Holderead, Marion, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on two motions filed by defendant Hi-Way Dispatch, Inc. The first, a motion to strike demand for punitive damages, was filed August 12, 1985; the second, a motion for summary judgment, was filed on September 13, 1985. On August 14, 1985, plaintiff Bobby J. Andrews filed a response brief to Hi-Way Dispatch, Inc.'s motion to strike demand for punitive damages; and on January 24, 1986 plaintiff responded to defendant's motion for summary judgment. Defendant filed a reply brief on January 31, 1986.

Plaintiff initially commenced suit on March 13, 1985, against two defendants, Hi-Way Dispatch, Inc. and the Teamsters Local Union No. 135. On July 10, 1985, defendant Teamsters filed a motion to strike jury demand and a motion to strike demand for punitive damages, and on August 12, 1985, Teamsters filed a motion for summary judgment. Plaintiff responded to the Teamsters' motion to strike jury demand and motion to strike demand for punitive damages on August 14, 1985, but failed to respond to Teamsters' motion for summary judgment.

On October 15, 1985, plaintiff moved this court for leave to file a second amended complaint. This motion, to remove defendant Teamsters as a party pursuant to settlement between plaintiff and defendant Teamsters, was granted on October 15, 1985. Now that defendant Teamsters is removed from the suit its motions are moot. Since defendant Hi-Way Dispatch, Inc. incorporates the arguments presented by defendant Teamsters, these arguments will be considered as part of Hi-Way's brief in support of the motion to strike the punitive damage claim and the motion in support of summary judgment.

For the following reasons, defendant Hi-Way Dispatch, Inc.'s motion for summary judgment is granted and Hi-Way Dispatch, Inc.'s motion to strike punitive damages and to strike the jury demand is therefore moot.

### Summary of the Facts

The facts, which for present purposes must be construed in plaintiff's favor, are relatively undisputed and are as follows. At all relevant times, plaintiff Bobby J. Andrews ("Andrews") was employed by defendant Hi-Way Dispatch, Inc. ("Hi-Way") as a driver beginning around May 8, 1979. The employees of Hi-Way are represented by Teamsters Local Union No. 135 ("Union"). Andrews became a member of the Union on or about thirty (30) working days after beginning to work for defendant. During 1984 Andrews was active on behalf

of candidates who ran against the incumbent officers of the Union.

The Union is an unincorporated association and a labor union. This Union during all times relevant to this case, was a labor organization representing employees in an industry that affected commerce as defined in § 501(1) and (3) of the Labor Management Relations Act (29 U.S.C. § 142(1) and (3) and 152(5) and within the meaning of § 301 of the Act, 29 U.S.C. § 185). On March 1, 1982, Hi-Way and the Union entered into a collective bargaining agreement that expressly forbid discharge of an employee except for "just cause." At all relevant times, the Union was a recognized collective bargaining representative of the bargaining unit consisting of Hi-Way's employees including Andrews.

The events which led up to plaintiff's discharge began on November 6, 1984, when Andrews was dispatched from North Chicago to Gurnee, Illinois, to pick up a load at the Anchor Glass Plant that was bound for the Kraft Foods Plant ("Kraft") in Kendallville, Indiana. At the time that Andrews was informed of the dispatch, he asked the dispatcher if there were any other loads he could take instead of the Kraft load. Andrews wanted to avoid Kraft because he had experienced problems there in the past. Andrews was suspended for three days for refusing to work in the warehouse as instructed by Kraft. Also, another driver had recently been discharged due to an incident at Kraft. Therefore, when Andrews got to Anchor Glass in Gurnee, Illinois, he again called the dispatcher to ask if there was any other load he could take but none was available.

On the morning of November 7, 1984, when Andrews arrived at Kraft, he backed up the truck and was then instructed by the fork lift driver to go back in the warehouse and "throw pallets down." After about one-half hour of performing such warehouse work, Andrews asked the fork lift driver if he could use the telephone. He then called Hi-Way to complain and request that OSHA be called to investigate because Andrews felt that the conditions of pulling down pallets stacked up higher than one's head with glassware stacked around him made the work unsafe. Andrews was extremely cautious to inform the dispatcher that he planned to go ahead and perform the work despite his protests (this conversation was tape recorded by Andrews).[1]

Andrews then returned to the warehouse to pull more pallets down and shortly thereafter injured his back. Andrews told the Kraft supervisor that Andrews had injured his back.[2] The injury was then reported to Hi-Way by telephoning Jim Trout, a conversation which Andrews also tape recorded. When Andrews reported that he thought he could drive his truck, the dispatcher suggested that he just drive back to Marion and see his own doctor about the injury.

Plaintiff returned and went to see his doctor in Marion the following day, November 8, 1984. On November 9, Operations Manager for Hi-Way, Bill Peterson, telephoned Andrews and discharged him (another tape recorded conversation). In the conversation, and by subsequent letter of discharge, Peterson said that Kraft complained that Andrews had a camera and tape recorder on their property and that he threatened them with OSHA charges. Peterson claims that the company had lost $300,000 worth of business as a result of the Kraft cancellation that was due to the problem they had with Andrews on November 7, 1984. Andrews was discharged for causing this loss of business.

In a grievance filed on November 9, 1984 (Ex. 3, Andrews affidavit), Andrews pro-

1. Plaintiff has been in the habit of carrying a tape recorder with him at work for about five years. (Dep. II: 108). He felt that it was necessary to record his conversations with officials of the Company, because the Company has a practice of taping all telephone conversations with employees. (Andrews Dep. May 24, 1985 at 36).

2. Plaintiff had a prior history of back problems including back surgery in March, 1984, as a result of a truck accident. (Andrews Dep. June 12, 1985 at 51–52).

tested both his work assignment to Kraft and the unsafe working conditions. Andrews also filed a request to the Occupational Health and Safety Administration ("OSHA") to investigate both the working condition at Kraft and Andrews' work assignment. On November 9, 1984, Bill Peterson, acting on behalf of defendant company, stated to Andrews that he (Andrews) should not have reported his back injury.

Andrews received a written letter of discharge dated November 11, 1984 (Ex. 4, Andrews affidavit). Andrews wrote his own grievance dated November 12, 1984 (Ex. 5, Andrews affidavit), filed it with Hi-Way, and delivered a copy of the grievance to the Union Business Agent, Carl Wagner. The contractual grievance procedure first calls for a terminal level meeting between the Business Agent and the employer's Operations Manager, followed by an appeal to the Joint State Committee, which sits in Indianapolis. (Ex. A, Union's summary judgment motion (SJM) at 25.)

If the grievance is not resolved there, it may be appealed to the Joint Area Committee which sits in Chicago. *Id.* These joint committees were created pursuant to the collective bargaining agreements and are comprised of an equal number of Union and company representatives. The committees' functions are to hear and decide grievances. Any decision reached by a majority vote of a committee is "final and binding on both parties." If the State Committee is "unable to agree or come to a decision on a case," such as in a "deadlock," it may be appealed to the Area Committee. These deadlock cases at the Area Committee level are then submitted to an "umpire" (i.e., arbitrator).

Andrews' grievance meeting was held on November 16, 1984. Since the case was not resolved, it was appealed to and heard by the State Committee on November 28 (Ex. B, Union's SJM). Before this meeting, plaintiff submitted to his Business Agent, Carl Wagner, written statements by employee witnesses and transcripts of tapes of phone conversations Andrews had with company officials. Plaintiff met with Wag-

ner before the hearing and discussed strategy. Wagner, along with two Union stewards, friends of Andrews, represented Andrews at the hearing. At the end of the State Committee hearing, a deadlock was reached and the grievance was not resolved. The grievance was later heard on December 11, 1984 by the Area Committee (Ex. C, Union's SJM), at which time a unanimous vote to deny the grievance was reached. This was the final stage of the grievance process. Andrews had exhausted the available remedies provided under the collective bargaining agreement.

On March 13, 1985, plaintiff brought this suit, pursuant to § 301 of the Labor Management Relations Act (29 U.S.C. § 185), alleging that he was discharged by Hi-Way on November 9, 1984, in violation of the collective bargaining agreement between Hi-Way and defendant Union.

## SUMMARY JUDGMENT

### Applicable Law

This is a hybrid § 301 suit filed by plaintiff alleging, in essence, that defendant Union breached its duty of fair representation and that defendant company conspired with the Union to deprive plaintiff of his rights as secured by Labor-Management Relations Act of 1947, as amended 29 U.S.C. § 185. Defendant Hi-Way has denied plaintiff's allegations and has moved for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of sum-

mary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

### Arguments of the Parties

The gravamen of plaintiff's claim is that the Union refused and failed to adequately represent him by refusing to prepare, investigate and present plaintiff's grievance on the matter of his discharge and also failed to "deadlock" the grievance process. The complaint further alleges that this conduct was intentional and deliberate on the part of the Union because it was based on personal animosity toward the plaintiff; retaliation for plaintiff's support of opposi-

tion candidates for union office; and retaliation for plaintiff's "opposing opinions on internal union matters."

Plaintiff's claim against his employer, Hi-Way Dispatch, centers on the allegation that plaintiff was discharged without cause, in violation of the collective bargaining agreement.

Defendant Hi-Way Dispatch, on the other hand, argues that there is no genuine issue as to any material fact in this case, and that the plaintiff has failed to come forth with any evidence in support of his complaint that would establish a claim against the union or the employer upon which relief may be granted.

### Discussion

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, permits a union employee to sue his employer for violation of a collective bargaining agreement. However, where the union and the employer have agreed to submit disputes to a grievance-arbitration process, the employee must first show that the union has breached its duty of fair representation. *See Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The cause of action against the union is implied under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* To prevail against either the employer or the union, therefore, the employee must show that the employer's action was contrary to the collective bargaining agreement and that the union breached its duty. Such a suit, as a formal matter, comprises two causes of action.

The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The suit against the Union is one for breach of the union's duty of fair representation, which is implied under the scheme under the National Labor Relations Act. *Flores*

*v. Levy Co.*, 757 F.2d 806, 808 (7th Cir. 1985).

These two claims are inextricably interdependent. To prevail against either the company or the union plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981).

■ The employee may choose to sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both defendants. *DelCostello*, 103 S.Ct. at 2291. The suit is thus not a straightforward breach of contract suit under § 301, but a hybrid § 301/fair representation action, amounting to "a direct challenge to 'the private settlement of disputes under [the collective bargaining agreement].'" *DelCostello*, 103 S.Ct. at 2291.

In the present case, Andrews seeks to sue his employer, Hi-Way Dispatch. In order to prevail Andrews must demonstrate a breach of duty by the Union as well as a breach of the collective bargaining agreement by the employer.

### The Law with Respect to the Union's Duty of Fair Representation

At the outset it is helpful to outline the legal standard to be applied in evaluating the Union's conduct in its handling of the plaintiff's discharge grievance. In *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981), the United States Court of Appeals for the Seventh Circuit held that plaintiffs must show that the union intentionally and justifiably caused them harm. The court states that "[t]he 'duty' is not breached without substantial evidence of fraud, deceitful action or dishonest conduct." *Id.* at 522. A similar holding was obtained in *Superczynski v. P.T.O. Services*, 706 F.2d 200 (7th Cir.1983), some two years later. *See also Dober v. Roadway Express*, 707 F.2d 292 (7th Cir.1983). Most recently that court wholly solidified its decision in unmistakeable language as follows:

It is now settled law that, at least in this Circuit, a union does not breach its DFR [duty of fair representation] unless it "intentionally caus[es] harm to an employee," *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981); *Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir.1983); *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202–03 (7th Cir.1983). *Cf. Hoffman*, 658 F.2d at 523–25 (Cudahy, J., concurring). *Hoffman* imposes a standard under which there must be deliberate or intentional misconduct on the part of the union before it has breached its DFR. *Superczynski*, 706 F.2d at 202–03; *Graf v. Elgin, Joliet & Eastern Railway Co.*, 697 F.2d 771, 774–81 (7th Cir.1983). This duty "is not breached, and the employee has no remedy without substantial evidence of fraud, deceitful action or dishonest conduct." *Hoffman*, 658 F.2d at 522.

*United Independent Flight Officers v. United Airlines, Inc.*, 756 F.2d 1274, 1282 (7th Cir.1985).

*Hoffman v. Lonza, Inc.*, 658 F.2d 519 (7th Cir.1981), is the law of the Circuit regarding the proof required of a plaintiff seeking to establish a breach of fair representation in an individual grievance proceeding. The *Hoffman* court "limit[ed] suits for breach of the duty to fairly represent to instances of intentional misconduct by unions." *Id.* at 522. Several cases recognize *Hoffman* as the controlling standard. *See Dober v. Roadway Express, Inc.*, 707 F.2d 292 (7th Cir.1983); *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200 (7th Cir.1983); *Graf v. Elgin, Joliet & Eastern Railway Co.*, 697 F.2d 771, 777–78 (7th Cir.1983); *United Steelworkers of America v. NLRB*, 692 F.2d 1052, 1057 (7th Cir.1982) (*per curiam*); *Cote v. Eagle Stores, Inc.*, 688 F.2d 32, 34–35 (7th Cir. 1982) (*per curiam*); *Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685, 695–96 (7th Cir.1982).[3]

**3.** The Seventh Circuit has recently reaffirmed the *Hoffman* standard stating that plaintiff had

For the union to breach its duty of fair representation there must be "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). "[N]egligence, even when gross, does not violate the duty of fair representation." *Dober,* 707 F.2d at 294. A union member must show that his union deliberately failed to properly pursue his claim against the company. *Superczynski,* 706 F.2d at 203. It is further required that "to prove arbitrary or discriminatory treatment, the plaintiff must show that the union's conduct was intentional, invidious and directed at that particular employee." *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 293 (7th Cir.1975).

*The Union's Representation of Andrews*

■ The facts show that Andrews assisted the union in the investigation, preparation and presentation of his grievance. Plaintiff was present at the terminal level meeting on his grievance on November 16, 1984. Plaintiff spoke with Wagner before the hearing and discussed strategy with him. (Dep. I: 54,55.)[4] Plaintiff was represented at the hearing by Business Agent Wagner, along with two union stewards at the company who were friends of the plaintiff and fellow members of the union.

After the State Joint Committee hearing plaintiff was hard pressed to point to any deficiencies in the hearing, and concluded that: "[We] could not have gotten any more material as evidence in this case, but I think Mr. Wagner could have presented it with a little more diligence, I guess you could say." (Dep. I: 67).

At the end of the State Committee hearing, plaintiff was asked if he had any other evidence to present, to which he replied, "no," and further affirmed that Wagner

"not raised a colorable claim that the union committed 'intentional misconduct,' which under *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir.1981), is an essential component of any suit attacking the adequacy of a union's representation." *Camacho v. Ritz-Carlton Water Tower,* 786 F.2d 242, 244 (7th Cir.1986).

had presented everything available to be presented and had done a "fair and proper job" of representing him. (Wagner Affidavit, Union Exhibit B). The State Committee deadlocked and thus did not resolve the grievance. It was thereafter submitted to the Area Committee, which held its hearing on December 11, 1984. Plaintiff talked to Wagner two or three times before the Area Committee meeting and prepared a statement to read to the Committee. Plaintiff had full opportunity to read his statement and present any evidence that he had. Nevertheless, the Area Committee, by unanimous decision, voted to deny the grievance. (Wagner Affidavit, Union Exhibit B, p. 124).

Plaintiff had no complaints about the evidence present to the Area Committee. In fact, plaintiff testified:

> From what Peterson presented and from what I presented, it was cut and dry. I could have won the case. ... [T]hey had all the facts there in front of them. ... With the facts presented, I should have won the case. (Dep. I: 101).

Plaintiff's only real complaint about the Union's performance at the Area Committee was that Wagner failed to put a "fix" in with the Committee before the hearings began:

> In my opinion, on my behalf he should have—since he was up there a couple of days in advance, he should have got with those—the Teamsters side of that panel and discussed my case—which maybe he did, I don't know—and said, hey, let's either deadlock this case or win it. Let's not lose this case. Let's either deadlock it—all you guys vote my way, or forget it. Dep. I: 100).

Plaintiff admitted that he had no knowledge or evidence of any attempt by any party to exert ex parte influence upon

**4.** The deposition is transcribed in two volumes and will be referred to herein as "Dep. I" for the May 24 session and "Dep. II" for the June 12 session.

Committee members. The plaintiff thus testified:

Q. Do you have any facts that would lead you to believe that Carl Wagner conspired with members of the company to preordain the decision of your case?

A. No.

Q. Do you have any reason—any facts to support a contention that any other representative of Local 135 colluded with some member with that committee?

A. No.

Q. Do you have any facts to support your belief, your opinion that your case was decided against you because you're a member of Teamsters for Democratic Union?

A. No.

(Dep. II: 167–68).

In fact, the plaintiff apparently believed that the evidence he had gathered for Wagner and that had been presented to the Area Committee was sufficiently strong that he should have won the grievance: "[T]hey had all the facts there in front of them. ... With the facts presented I should have won the case." (Dep. I: 101.) At the conclusion of the State Committee hearing on his discharge grievance, the plaintiff responded to questioning as follows:

Chairman: ... Bobby have you got anything else to say or anything else to present?

Grievant: Not that I can think of, no sir.

Chairman: Has Carl presented everything available to be presented?

Grievant: Yes he has.

Chairman: Has he done a fair and proper job of representing you?

Grievant: I feel that he has.

(Wager Affidavit, Union Exhibit B). A similar colloquy took place between the Area Committee:

Chairman WSOL: ... Let me ask you this, driver. Have you presented all of your evidence pertaining to this case?

Mr. Andrews: Yes, sir, I have.

Chairman WSOL: Are you satisfied with the way your local union has represented you?

Mr. Andrews: Yes I am.

(Wagner Affidavit, Union Exhibit C).

For plaintiff to prevail on his duty of fair representation claim against the Union he must show that the Union conduct is "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Plaintiff's own words indicate that both at the close of the State Committee hearing and at the Area Committee hearing plaintiff was satisfied with Wagner's representation at the time. This court finds that the Union did not represent plaintiff in an arbitrary, discriminatory manner or in bad faith and therefore plaintiff does not prevail on his breach of duty of fair representation claim.

■ If Wagner presented all the evidence, then whatever plaintiff's complaints are about the manner of his presentation, he cannot make the requisite showing that anything about Wagner's representation caused actual harm to the grievance presentation. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976). The plaintiff's complaints about Wagner's lack of enthusiasm and lack of diligence are conclusory in any event, and the transcripts of both Committee hearings reveal evidence to the contrary. (Wagner Affidavits, Union Exhibits B and C). It is simply not enough for an employee to show some level of negligence; a union member, plaintiff, must show that the Union deliberately failed properly to pursue his claim against the Union. *Superczynski*, 706 F.2d at 203.

Applying the *Hoffman* standard to the facts of the present case, the plaintiff has not raised a triable issue. There is not the slightest indication that the Union acted in bad faith in prosecuting Andrews' grievance.

This court, therefore, finds that the Union did not represent plaintiff in an arbitrary, discriminatory manner or in bad faith and consequently plaintiff does not

prevail on his breach of duty of fair representation claim.

### Andrews' Suit Against Hi-Way Dispatch, Inc.

The collective bargaining agreement clearly provides that where a joint state committee, by a majority vote, settles a dispute, such a decision shall be final and binding. (Collective Bargaining Agreement, Article 45, Grievance Machinery and Union Liability, § A).

The decision rendered by the Area Committee on plaintiff's grievance, on December 11, 1984, was a unanimous decision. It was, thus, a decision reached by a majority vote. Under the clear terms of the collective bargaining agreement the decision of December 11, 1984 denying plaintiff's grievance, was final and binding. By this very decision a determination was made that Hi-Way, by terminating Andrews, had not acted in violation of the collective bargaining agreement.

In deciding motions for summary judgment this court must draw all inferences in favor of the party resisting the summary judgment. Even with that standard, this court cannot find a genuine issue of fact upon which the plaintiff may base his claim.

Plaintiff simply has not met his burden of showing that the Union breached any duty of fair representation it owed to plaintiff. In fact, plaintiff presents not one scintilla of evidence to suggest that the Union has breached its duty of fair representation. Showing that the Union breached its duty of fair representation is the indispensible predicate for an action, pursuant to § 301, against the employer. *United Parcel Service, Inc. v. Mitchell, supra,* 451 U.S. at 62, 101 S.Ct. at 1564. Plaintiff's inability to prevail against the Union necessarily prevents him from avoiding an entry of summary judgment in favor of the employer because a breach of the Union's duty of fair representation is essential to the maintenance of the suit against the employer for breach of the collective bargaining agreement. *Cote,* 688 F.2d at 35.

### Claim for Retaliatory Discharge

Plaintiff argues that Hi-Way discharged him in retaliation for his complaining about safety conditions and in retaliation for filing a grievance. While plaintiff does not assert a state law claim against Hi-Way for retaliatory discharge, the facts give rise to this cause of action.

Assuming, *arguendo,* that plaintiff can establish a state claim for retaliatory discharge, such a claim is preempted by federal labor law. A brief discussion of this issue, however, is in order.

Section 301 of the Labor Management Act provides:

Suits for violation of contracts between an employer and a labor organization in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ....

The Supreme Court has recently made clear that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. ——, ——, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985), quoting *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962).

The doctrine is motivated by concern for uniformity in the law applied to labor contracts. *Id.* Thus, this doctrine of preemption requires that suits alleging breaches of a collectively bargained contract be brought under § 301 and decided by reference to federal labor law.

The Supreme Court in *Lueck* has described the proper methodology for analyzing whether a state tort claim is preempted:

[T]he court must look to see whether the state law claim confers non-negotiable state law rights on employers or employ-

ees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, the law is pre-empted.

*Id.*

■ While a claim for retaliatory discharge is a state law claim, the claim is "inextricably tied" to the contract. To determine whether there was a malicious breach of the agreement's provisions concerning the reason for termination, the court would have to consider whether the provision itself was breached, which would involve consideration of a term of the contract. Thus, the court finds that any state law claim implied in the instant case is preempted by § 301.

### Conclusion

It is, therefore, CONSIDERED, ORDERED and ADJUDGED that defendant's motion for summary judgment be and hereby is GRANTED, thereby rendering defendant's motion to strike jury demand and to strike punitive damages MOOT.