962 F.2d 10
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CONSOLIDATED RAIL CORPORATION, Plaintiff-Appellant,
v.
BURLINGTON NORTHERN RAILROAD COMPANY, Defendant-Appellee.
 No. 90-3397.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 27, 1991.
Decided April 27, 1992.
 
 Before WOOD, Jr.,* RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 This case is the appeal of Consolidated Rail Corporation (Conrail) from the district court's grant of summary judgment in favor of the defendant-appellee, Burlington Northern Railroad Company (Burlington Northern). The district court held that, as a matter of law, Burlington Northern's April 22, 1981 agreement with Conrail did not indemnify Conrail for costs it incurred as a result of a February 1985 chemical spill at Conrail's rail yard in Elkhart, Indiana. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 In January 1985, rail tank car NATX 9408 took on a load of approximately 160,550 pounds of anhydrous hydrogen fluoride, a highly toxic chemical, at an Allied Corporation chemical plant in Canada. On January 14, 1985, the car was shipped to another Allied plant in Metropolis, Illinois. Upon the car's arrival in Metropolis, Allied employees experienced difficulty in unloading it. Indeed, after the unloading process had finished an Allied relief operator notified his foreman that he believed the tank car still contained the toxic chemical. Nonetheless, Allied employees designated the car as "empty" and released it for shipment to the Burlington Northern's rail yard at Cicero, Illinois.
 
 
 4
 On or around February 3, 1985, Burlington Northern crews in the Cicero yard formed freight train BNEL3Y, which was bound for the Conrail rail yard at Elkhart, Indiana. Among the cars in this train was NATX 9408. All but the first two miles of the trip between Cicero and Elkhart is over tracks owned by Conrail.
 
 
 5
 A Conrail crew with two Conrail engines went to Cicero to transport train BNEL3Y to Elkhart. While at the Burlington Northern yard, the Conrail crew was under the direction and control of Burlington Northern employees. In Cicero, a Conrail crew member noticed that car NATX 9408 appeared to be leaking, and he notified the Burlington Northern yardmaster. A Burlington Northern car foreman allegedly inspected the car and found that it was not leaking.[1] The Burlington Northern then cleared train BNEL3Y, with car NATX 9408, for departure.
 
 
 6
 Train BNEL3Y arrived at Elkhart in the early hours of February 4. In Elkhart, it was discovered that car NATX 9408 was fractured and was leaking anhydrous hydrogen fluoride. As a result of this leak, 1500 nearby residents were evacuated and more than 150 persons were treated at an area hospital for exposure to toxic gas. Thereafter, Conrail entered into settlements with over 100 persons and businesses in the Elkhart area for personal injuries, business losses and property damage that resulted from the chemical spill.
 
 
 7
 Prior to this incident, on April 22, 1981, Conrail and Burlington Northern entered into an indemnity agreement which distributed liability between the two parties in the event of certain accidents.[2] The construction of the terms of this contract is the subject of this appeal.
 
 B. District Court Proceedings
 
 8
 In 1986 Conrail filed suit against North American Car Company, the manufacturer of NATX 9408, General Electric Railcar Services Corp., which maintained the car, Allied Corporation, and the Burlington Northern for contribution for the costs it incurred in the Elkhart spill. Conrail asserted common law negligence claims against all of the defendants. In addition, it brought claims against the Burlington Northern under an express indemnity agreement between the two railroads. Early in the case, Conrail dismissed its claim against North American Car Company. All remaining defendants then moved for summary judgment, which the district court granted in part in 1988. Consolidated Rail Corp. v. Allied Corp., 692 F.Supp. 924 (N.D.Ind.1988). In its opinion, the district court examined the common law negligence claims and determined that Indiana law applied. The court then found that Indiana did not allow contribution among joint tortfeasors and entered judgment on these claims. The court, however, refused to grant summary judgment on the indemnity contract claim against the Burlington Northern, finding that genuine issues of fact existed about where the accident took place. This court affirmed. Consolidated Rail Corp. v. Allied Corp., 882 F.2d 254 (7th Cir.1989).
 
 
 9
 The Burlington Northern then renewed its motion for summary judgment on the express indemnity agreement, arguing that the agreement could not impose any liability on the Burlington Northern in any possible factual scenario. After an analysis of the contract and the relevant Indiana law dealing with contract interpretation, the district court concluded that the indemnity agreement was not ambiguous. The district court then noted that a potential factual ambiguity existed whether train "BNEL3Y" was designated as a Conrail train or as a Burlington Northern train. The district court analyzed the effects of this factual ambiguity and then determined that, however it was resolved, the agreement would not make Burlington Northern liable to Conrail. The district court found that no genuine issues of material fact existed and accordingly granted Burlington Northern's motion for summary judgment on Conrail's contract claim.
 
 II
 ANALYSIS
 
 10
 * The basic law of Indiana[3] governing the interpretation and construction of contracts is clear. This case involves the construction of an indemnity contract; however, Indiana cases make clear that "[i]ndemnity agreements are a form of contract, and we construe such agreements according to the rules and principles of the law of contracts." Bell v. Commonwealth Land Title Ins. Co., 494 N.E.2d 997, 999 (Ind.Ct.App.1986); see also TLB Plastics Corp. v. Procter & Gamble Paper Products Co., 542 N.E.2d 1373, 1377 (Ind.Ct.App.1989). As a general rule, the provisions of the controlling instrument determine the intent of the parties to the contractual relationship. American Transp. Co. v. Central Ind. Ry. Co., 264 N.E.2d 64, 66 (Ind.1970); Orkin Exterminating Co. v. Walters, 466 N.E.2d 55, 60 (Ind.Ct.App.1984); Barker v. Cole, 182 Ind.App. 640, 396 N.E.2d 964, 971 (Ind.Ct.App.1979); General Ins. Co. of America v. Hutchison, 239 N.E.2d 596, 599 (Ind.Ct.App.1968). However, when the contractual provisions are ambiguous, resort must be had to the rules of contract construction and to extrinsic evidence. R.R. Donnelley & Sons Co. v. Henry-Williams, Inc., 422 N.E.2d 353, 356 (Ind.Ct.App.1981); Rieth-Riley Constr. Co., Inc. v. Auto Owners Mutual Ins. Co., 408 N.E.2d 640, 645 (Ind.Ct.App.1980); Tastee-Freez Leasing Corp. v. Milwid, 365 N.E.2d 1388, 1390 (Ind.Ct.App.1977).
 
 
 11
 Ambiguities in contracts may be either patent or latent. A patent ambiguity is apparent on the face of the instrument, whereas a latent ambiguity arises in applying the provisions as directed by the instrument. Board of Directors, Ben Davis Conservancy Dist. v. Cloverleaf Farms, Inc., 359 N.E.2d 546, 549 n. 3 (Ind.Ct.App.1977); Hauck v. Second Nat'l Bank of Richmond, 286 N.E.2d 852, 862 (Ind.Ct.App.1972). Under Indiana law, the test for determining whether a contract is ambiguous is whether reasonable people would differ as to its interpretation. Ohio Casualty Group of Ins. Cos. v. Gray, 746 F.2d 381, 382 (7th Cir.1984); Williams v. National Can Corp., 603 F.Supp. 1268, 1275 (N.D.Ind.1985); Kitchen Jewels, Inc. v. Beck, 513 N.E.2d 1246, 1249 (Ind.Ct.App.1987).
 
 
 12
 Taking these standards into consideration, we agree with the district court that the indemnity agreement is not ambiguous. Recital paragraph three of the contract clearly shows that Burlington Northern and Conrail intended for the contract provisions to apply only when one party operated its trains over and upon the other party's tracks. Substantive paragraph one of the agreement allocated liability to the party operating its train, without regard to negligence, when an accident was caused by the condition of the tracks, roadbed, equipment, engines, cars or other rolling stock. Paragraphs two through five applied to situations not covered in paragraph one. Paragraph two distributed liability on the negligent party when an accident was caused solely from the negligence of one of the parties. Paragraph three held both parties jointly liable when an accident resulted from their joint and concurring negligence. Paragraph four of the agreement allocated liability to the party operating its train when an accident resulted from the sole negligence of a person or a corporation not a party to the agreement. Finally, paragraph five held the party operating its train liable for all accidents in which the cause could not be determined.
 
 
 13
 Though these contractual provisions may be somewhat complicated, the intent of the parties to this contract is readily ascertainable.
 
 B
 
 14
 Although the indemnity agreement was not ambiguous, genuine issues of fact were before the district court. However, for purposes of summary judgment, the question is whether the genuine issues of fact are material. Summary judgment is appropriate when there are no genuine issues of material fact to be resolved and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Wainwright Bank & Trust Co. v. Railroadmen's Fed. Sav. & Loan Ass'n, 806 F.2d 146, 149 (7th Cir.1986). A disputed fact is material if, under applicable law, it is outcome determinative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir.1989).
 
 
 15
 Here, as the district court pointed out, under the terms of the indemnity agreement, the possible scenarios arising from the disputed facts do not permit liability to be allocated to any party other than Conrail. There were two genuine issues of fact before the district court. First, it was unclear whether the accident actually occurred on Conrail tracks in Elkhart, Indiana or whether it occurred on Burlington Northern's tracks in Cicero, Illinois. Second, there was also an ambiguity as to whether the train that hauled the leaking tank car was designated as a Conrail train or whether it was designated as a Burlington Northern train. With regard to this second dispute, however, it is also important to note that the undisputed facts showed that the train was being powered by Conrail engines and operated by Conrail employees. From these two factual ambiguities, four alternative factual situations might arise, none of which fix liability on Burlington Northern.
 
 
 16
 1. In three of the four possible factual situations the indemnity agreement does not apply.
 
 
 17
 a. Conrail train in accident on Conrail tracks.
 
 
 18
 If the accident occurred with a Conrail train hauling the leaking tank car over Conrail tracks, then the entire indemnity agreement would not apply. The agreement is only in force when one party operates its trains over the tracks of the other party. In this situation, at the time of the accident a Conrail train would be operating on Conrail tracks. The condition precedent of recital paragraph three would not be met and, consequently, the contract would not apply.
 
 
 19
 b. Burlington-Northern train in accident on Burlington
 
 
 20
 Northern tracks.
 
 
 21
 If the accident occurred with a Burlington Northern train carrying the leaking tank car over Burlington tracks, the indemnity agreement would not apply. In this situation, a Burlington Northern train would be on Burlington Northern tracks and, as in the situation above, the condition precedent to the applicability of the contract would not be satisfied. The indemnity agreement would therefore not apply.[4]
 
 
 22
 c. Burlington Northern train in accident on Conrail tracks.
 
 
 23
 If the accident occurred with a Burlington Northern train carrying the leaking tank car over Conrail tracks, the liability provisions of the indemnity agreement would still not apply. For the indemnity agreement to apply, one party must operate its trains over the tracks of the other party. The undisputed facts are that, regardless of who owned the train, it was being powered and operated by Conrail. Therefore, in the positive, factual situation, Conrail would be operating a Burlington Northern train on Conrail tracks at the time of the accident. The agreement does not contemplate this possible scenario and therefore it would not apply.
 
 
 24
 2. In the one remaining factual alternative, the agreement applies and it clearly fixes liability on Conrail.
 
 
 25
 a. Conrail train in accident on Burlington Northern tracks.
 
 
 26
 If the accident occurred with a Conrail train hauling the leaking tank car over Burlington Northern's tracks, then the agreement would apply. Conrail would be operating its train over the tracks of the other party (Burlington Northern). This factual situation would trigger the application of substantive paragraph one of the contract. Therefore, paragraph one of the contract would apply and fix liability solely on Conrail, the operator of the train.
 
 Conclusion
 
 27
 The indemnity agreement is not ambiguous. Furthermore, although there are genuine issues of fact, they are not outcome determinative and therefore not material. The four possible factual alternatives, created by the existence of the two factual ambiguities, either negate the applicability of the indemnity agreement or fix liability solely on Conrail. Under no circumstances would liability fall on Burlington Northern. Therefore, the district court was correct in granting Burlington Northern's motion for summary judgment on Conrail's claim under the April 22, 1981, indemnity agreement. We therefore affirm the judgment of the district court.
 
 AFFIRMED
 APPENDIX
 
 28
 Excerpts from the text of the April 22, 1981, indemnity agreement between Burlington Northern Railroad Company and Consolidated Rail Corporation.
 
 
 29
 From time to time, without the benefit of specific written agreement allocating liability, joint use is made of trackage of either one or the other of our companies for interchange and/or other purposes. Apportionment of accident expenses under such circumstances can be difficult and burdensome.
 
 
 30
 In order to forestall controversies concerning use of each other's trackage for interchange and/or other purposes in those cases where there is no specific written agreement allocating liability, it is proposed that the following agreement be entered into between our companies:
 
 
 31
 It is hereby agreed, effective as of the date of acceptance hereinbelow noted, that if either party hereto operates its trains, engines, cars or other rolling stock over and upon the trackage of the other party hereto for interchange and/or other purposes and said operation and use is not covered by other specific written agreement allocating liability between the parties, then the provisions of this Agreement shall apply to said operation and use.
 
 
 32
 1. Each party hereto from time to time operating its trains, engines, cars or other rolling stock over and upon the trackage of the other party shall be responsible, without regard to negligence, for the consequences of any wreck, derailment, or other accident involving a train, engine, car or other rolling stock being moved by or involving an employee of such party which is caused by the condition of track or roadbed or by the condition of equipment appurtenant thereto, or by the condition of engines, cars or other rolling stock being moved by such party.
 
 
 33
 2. Except as provided in 1. above, the consequences of any wreck, derailment or other accident resulting solely from the negligence of one of the parties hereto, or resulting solely from the negligence of one of the parties hereto concurring with the negligence of a person or corporation not a party to this Agreement, shall be the responsibility of the negligent party hereto.
 
 
 34
 3. Except as provided in 1. above, both parties hereto shall be jointly responsible for the consequences of any wreck, derailment or other accident resulting from their joint and concurring negligence, whether or not concurring with the negligence of a person or corporation not a party to this Agreement, except that each party hereto shall bear all loss, cost, expense or liability resulting from injury to or death of its employees and damage to their property and damage to its property including equipment or property in its account: both parties hereto shall be jointly responsible for and shall bear equally all loss, cost, expense or liability resulting from damage to track, loss or damage to property of persons or corporations not a party to this Agreement, and injury to or death of persons not a party to this Agreement.
 
 
 35
 4. Except as provided in 1. above, the consequences of any wreck, derailment or other accident involving the train of only one of the parties hereto resulting from the sole negligence of a person or corporation not a party to this Agreement shall be the responsibility of the party whose train is involved in such wreck, derailment or other accident. In the event of any wreck, derailment or other accident involving trains of both parties hereto resulting from the sole negligence of a person or corporation not a party to this Agreement, each party shall bear all loss, cost, expense or liability resulting from injury to or death of its employees and damage to their property and damage to its property, including equipment or property in its account: both parties hereto shall be jointly responsible for and shall bear equally all loss, cost, expense and liability resulting from damage to track, loss or damage to property of persons or corporations not a party to this Agreement, and injury to or death of persons not a party to this Agreement.
 
 
 36
 5. Except as provided in 1. above, the consequences of any wreck, derailment or other accident involving the train of only one of the parties hereto the cause of which cannot be determined, shall be the responsibility of the party whose train is involved in such wreck, derailment or other accident. In the event of any wreck, derailment or other accident involving the trains of both parties hereto the cause of which cannot be determined, each party hereto shall bear all loss, cost, expense or liability resulting from injury to or death of its employees and damage to their property and damage to its property, including equipment or property in its account: both parties hereto shall be jointly responsible for and shall bear equally all loss, cost, expense or liability resulting from damage to track, loss or damage to property of persons or corporations not a party to this Agreement, and injury to or death of persons not a party to this Agreement.
 
 
 37
 6. Each party hereto, for the liability imposed upon it by this Agreement, shall indemnify, defend and hold the other party wholly harmless.
 
 
 
 *
 Judge Wood assumed senior status on January 16, 1992, which was after oral argument in this case
 
 
 [1]
 A videotape produced during discovery revealed that the tank car was, in fact, leaking while it was at Burlington Northern's Cicero rail yard
 
 
 [2]
 This indemnity agreement consists of a letter from Burlington Northern's senior vice president for operations to the Conrail's senior vice president of operations, in which each officer bound his company to certain rules for allocating liability between the parties. It is attached as appendix to this order
 
 
 [3]
 At this point in the litigation, there is no real dispute as to whether the substantive law of Indiana governs this action. See Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir.1991)
 
 
 [4]
 As we noted previously, the issue of common law contribution among joint tortfeasors had been decided against Conrail in an earlier stage of this litigation